IN THE UNITED STATES COURT OF FEDERAL CLAIMS

19-449C
(Senior Judge Smith)

THE MODERN SPORTSMAN, LLC *ET AL.*,
Plaintiffs,

v.

THE UNITED STATES,
Defendant.

DEFENDANT'S MOTION TO DISMISS

JOSEPH H. HUNT
Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

L. MISHA PREHEIM
Assistant Director

OF COUNSEL:

MELISSA ANDERSON
Associate Chief Counsel
Litigation
Bureau of Alcohol, Tobacco,
    Firearms and Explosives

NATHANAEL B. YALE
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 616-0464
Nathanael.B.Yale@usdoj.gov

May 28, 2019

Attorneys for Defendant

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................... ii

INTRODUCTION ............................................................................................................ 1

ISSUES PRESENTED...................................................................................................... 3

STATEMENT OF THE CASE........................................................................................... 3

    I.   Statutory Framework For Regulating Machine Guns......................................................... 3

    II.  ATF's Prior Classifications Of Bump Stocks.................................................................... 5

    III. The Final Rule.............................................................................................................. 7

    IV. Plaintiffs' Allegations ................................................................................................. 8

SUMMARY OF THE ARGUMENT ................................................................................. 9

ARGUMENT .................................................................................................................. 10

    I.   Standard Of Review...................................................................................................... 10

    II.  The Government's Determination That Bump Stocks Fall Within The Statutory
         Prohibition On Machine Guns Did Not Effect A Compensable Taking .......................... 11

    III. Plaintiffs Fail To State A Regulatory Takings Claim Under *Penn Central* ..................... 17

CONCLUSION................................................................................................................. 19

# TABLE OF AUTHORITIES

## Cases

*Acadia Tech., Inc. v. United States*,
458 F.3d 1327 (Fed. Cir. 2006).................................................................. 11, 12, 16

*Acceptance Ins. Cos., Inc. v. United States*,
583 F.3d 849 (Fed. Cir. 2009)................................................................. 10

*Akins v. United States*,
82 Fed. Cl. 619 (2008) ................................................................. passim

*Akins v. United States*,
312 F. App'x. 197 (11th Cir. 2009) ................................................................. 6, 19

*Allied–General Nuclear Services v. United States*,
839 F.2d 1572 (Fed. Cir. 1988)................................................................. 13

*AmeriSource Corp. v. United States*,
525 F.3d 1149 (Fed. Cir. 2008)................................................................. 2, 12, 14

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)................................................................. 10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)................................................................. 10

*Branch v. United States*,
69 F.3d 1571 (Fed. Cir. 1995)................................................................. 18

*Connolly v. Pension Ben. Guar. Corp.*,
475 U.S. 211 (1986)................................................................. 18

*District of Columbia v. Heller*,
554 U.S. 570 (2008)................................................................. 18

*FHA v. Darlington, Inc.*,
358 U.S. 84 (1958)................................................................. 18

*Guedes et al. v. ATF et al.*,
920 F.3d 1 (D.C. Cir. 2019)................................................................. 1, 5, 8

*Guedes et al. v. ATF*,
356 F.Supp.3d 109 (D.D.C. 2019)................................................................. 8

*Gun Owners of America, Inc., et al. v. Barr, et al.*,
   No. 19-1298, 2019 WL 1395502 (6th Cir. Mar. 25, 2019).................................... 8

*Holliday Amusement Co. of Charleston v. South Carolina*,
   493 F.3d 404 (4th Cir. 2007) ........................................................... 14, 18

*Hollis v. Lynch*,
   827 F.3d 436 (5th Cir. 2016) ................................................................... 18

*Keystone Bituminous Coal Ass'n v. DeBenedictis*,
   480 U.S. 470 (1987)................................................................................ 17

*Lucas v. South Carolina Coastal Council*,
   505 U.S. 1003 (1992)................................................................... 14, 18, 19

*Maryland Shall Issue v. Hogan*,
   353 F. Supp. 3d 400 (D. Md. 2018) .................................................. 14-15

*Miller v. Schoene*,
   276 U.S. 272 (1928)........................................................... 11, 16, 17

*Mitchell Arms, Inc. v. United States*,
   7 F.3d 212 (Fed. Cir. 1993) ........................................................... 12-15

*Mugler v. Kansas*,
   123 U.S. 623 (1887)........................................................... 11, 14, 17

*Penn Central Transportation Co. v. City of New York*,
   438 U.S. 104 (1978)........................................................... 3, 10, 17

*Rith Energy, Inc. v. United States*,
   247 F.3d 1355 (Fed. Cir. 2001)............................................................... 19

*Rose Acre Farms, Inc. v. United States*,
   559 F.3d 1260 (Fed. Cir. 2009) .............................................................. 18

*Ruckelshaus v. Monsanto*,
   467 U.S. 986 (1984)................................................................................ 19

*Sig Sauer, Inc. v. Brandon*,
   826 F.3d 598 (1st Cir. 2016) .................................................................... 5

*Sommers Oil Co. v. United States*,
   241 F.3d 1375 (Fed. Cir. 2001)............................................................... 10

*United States v. Camp*,
   343 F.3d 743 (5th Cir. 2003) .................................................................. 16

*United States v. One Palmetto State Armory PA-15 Machinegun,*
 822 F.3d 136 (3d Cir. 2016)..................................................................... 18

**Statutes**

5 U.S.C. § 701 ............................................................................................. 8

15 U.S.C. § 7901(a)(4) ............................................................................. 16

18 U.S.C. Chapter 44 .................................................................................. 3

18 U.S.C. § 921 ........................................................................................... 4

18 U.S.C. § 921(a)(23) ................................................................................ 5

18 U.S.C. § 922(o) ......................................................................... 1, 3, 5, 13

18 U.S.C. § 922(o)(2) .................................................................................. 5

18 U.S.C. § 926(a) ...................................................................................... 5

26 U.S.C. Chapter 53 .................................................................................. 3

26 U.S.C. § 5841 ......................................................................................... 4

26 U.S.C. § 5845 ......................................................................................... 4

26 U.S.C. § 5845(b) .............................................................................. 3, 5, 7

26 U.S.C. § 7801(a)(2) ................................................................................ 7

26 U.S.C. §§ 7801(a)(2)(A) ........................................................................ 5

28 U.S.C. § 599A(b)(1) ............................................................................... 5

28 U.S.C. § 599A(c)(1) ............................................................................... 7

52 Stat. 1250 ............................................................................................... 4

Pub. L. No. 91–513 .................................................................................... 17

Pub. L. No. 99-308 ...................................................................................... 3

Pub. L. No. 107-296 .................................................................................... 7

**Rules**

RCFC 12(b)(6) ............................................................................................................... 10

**Regulations**

27 C.F.R. § 447.11 .................................................................................................... 3, 7

28 C.F.R. § 0.130(a)(1) ................................................................................................. 7

28 CFR § 0.130(a)(1)-(2) ............................................................................................. 5

83 Fed. Reg. 13,442 (Mar. 29, 2018) .......................................................................... 7

83 Fed. Reg. 66,514 (Dec. 26, 2018) ................................................................... passim

**Other Authorities**

1954 U.S.C.C.A.N. 4017 .............................................................................................. 4

1986 U.S.C.C.A.N. 1327 .............................................................................................. 4

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| THE MODERN SPORTSMAN, LLC *ET AL.*, | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 19-449 |
| | ) | (Senior Judge Smith) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S MOTION TO DISMISS

Pursuant to Rule 12(b)(6) of the Rules of the United States Court of Federal Claims (RCFC), defendant, the United States, respectfully requests that the Court dismiss the amended complaint of plaintiffs The Modern Sportsman, LLC, RW Arms, Ltd., Mark Maxwell, and Michael Stewart for failure to state a claim upon which relief may be granted.

## INTRODUCTION

With limited exceptions, Federal law provides that it "shall be unlawful for any person to transfer or possess a machinegun." 18 U.S.C. § 922(o). "A 'bump stock' is a device that replaces the standard stationary stock of a semiautomatic rifle—the part of the rifle that typically rests against the shooter's shoulder—with a non-stationary, sliding stock that allows the shooter to rapidly increase the rate of fire, approximating that of an automatic weapon." *Guedes et al. v. ATF et al.,* 920 F.3d 1, 7 (D.C. Cir. 2019) (*per curiam*). After providing the opportunity for notice and comment, the Department of Justice's (DOJ) Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) concluded that bump stocks fall within the scope of the statutory definition of machine gun. *Bump-Stock-Type Devices*, 83 Fed. Reg. 66,514 (Dec. 26, 2018)

(Final Rule).  The United States Court of Appeals for the D.C. Circuit sustained that
determination in *Guedes*.

Because the Final Rule announced a change in the Government's position regarding the
classification of certain bump stocks as machine guns, ATF explained that the Government
would not undertake its new enforcement policy for 90 days, during which time owners were
required to destroy their bump stocks or abandon them at the nearest ATF office.  83 Fed. Reg. at
66,514, 66,549.

Plaintiffs urge that the Government's determination effected a compensable taking.  That
contention is foreclosed by precedent, and this Court should dismiss plaintiffs' amended
complaint for failure to state a claim.  Plaintiffs do not, of course, contend that enforcing a
statutory restriction on the transfer or possession of contraband property is a compensable taking.
They nevertheless urge that enforcing the prohibition on machine guns in this case gives rise to a
taking because ATF previously concluded that certain bump stocks did not fall within the
definition of machine gun.  Applying settled law, this Court in *Akins v. United States,* 82 Fed. Cl.
619 (2008), rejected the same contention in closely analogous circumstances.  In that case, ATF
reviewed a sample of a stock assembly known as the Akins Accelerator, and informed the owner
that it did not fall within the statutory definition of machine gun.  More than three years later,
ATF informed the owner that it had concluded that the determination was mistaken and that the
Akins Accelerator was a machine gun within the meaning of the statute.  In holding that no
taking had occurred, the Court explained that "'[p]roperty seized and retained pursuant to the
police power is not taken for a 'public use' in the context of the Takings Clause.'"  *Id.* at 622
(quoting *AmeriSource Corp. v. United States,* 525 F.3d 1149, 1153 (Fed. Cir. 2008)).  The Court
further held that "Plaintiff's expectation interest in manufacturing and distributing Akins

2

Accelerators to the public free from Federal regulation is not a property interest protected by the Fifth Amendment." *Id*. at 623. Each of these rationales applies with equal force here. And, for similar reasons, the character of the Government's action and the extent of reasonable investment-backed expectations would compel the same result in an analysis under *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104, 124 (1978).

## ISSUE PRESENTED

Whether the Government's determination that bump stocks fall within the statutory prohibition on possession or transfer of a machine gun gives rise to a claim for a compensable taking.

## STATEMENT OF THE CASE

### I.    Statutory Framework For Regulating Machine Guns

Over the last century, Congress has imposed increasingly strict regulations on machine guns as part of the interconnected framework of Federal laws regulating the interstate firearms market. The Final Rule interprets provisions of three major firearms statutes that share a common definition of "machinegun": the National Firearms Act of 1934 (NFA), 26 U.S.C. Chapter 53; the Gun Control Act of 1968 (GCA), 18 U.S.C. Chapter 44; and the Firearm Owners Protection Act (FOPA), Pub. L. 99-308, 100 Stat. 449 (1986). Taken together, these three statutes prohibit the possession of post-1986 machine guns,[1] and closely regulate the possession of machine guns manufactured prior to the effective date of the FOPA. *See* 18 U.S.C. § 922(o).

---

[1] In this motion, we use the ordinary spelling of "machine gun" as two words, rather than the single-word spelling used in federal statutes and regulations: "machinegun." *See, e.g.*, 26 U.S.C. § 5845(b); 27 C.F.R. § 447.11.

The NFA, the first major Federal statute to regulate guns, required all persons engaged in the business of selling "firearms" (including machine guns)[2] and all firearms owners to register with the Collector of Internal Revenue, subjected all regulated firearm sales to a special tax, and required that transactions of regulated firearms be conducted using written order forms.[3] It also required that each maker of a regulated firearm "shall, prior to . . . making [it] . . . obtain authorization in such manner as required by this chapter." 26 U.S.C. § 5841. Congress enacted the NFA to target "lethal weapons . . . [that] could be used readily and efficiently by criminals or gangsters." H.R. Rep. No. 83-1337, at A395, *reprinted in* 1954 U.S.C.C.A.N. 4017, 4542.

In 1968, Congress passed the GCA to "regulate more effectively interstate commerce in firearms" to reduce crime and misuse, "assist the States and their political subdivisions to enforce their firearms control laws," and "help combat . . . the incidence of serious crime." *See* 18 U.S.C. § 921 *et seq*.; S. Rep. No. 89-1866, at 1 (1966). The GCA supplanted some prior firearms regulations, but exists alongside the NFA. *See* Pub. L. No. 785, 52 Stat. 1250 (1938) (repealed 1968). In 1986, Congress again addressed firearms, including the danger of machine guns. *See* H.R. Rep. No. 99-495, at 2, 7 (1986), *reprinted in* 1986 U.S.C.C.A.N. 1327, 1328, 1333 (describing proposed machine gun restrictions as "benefits for law enforcement" and citing "the need for more effective protection of law enforcement officers from the proliferation of

_____

[2] Although the NFA applies to "firearms," the term "firearms" is defined in the statute as a narrow set of dangerous weapons, not the full class of weapons encompassed by the plain meaning of the term "firearms." *See* 26 U.S.C. § 5845. "Firearms" in the NFA includes machine guns, short-barreled shotguns, short-barreled rifles, and several items that would not ordinarily be considered "firearms," such as silencers, rockets, and grenades. Standard-length shotguns and rifles (including all semi-automatic rifles) and non-automatic handguns are generally not "firearms" within the NFA's definition.

[3] Consistent with these taxing provisions, Congress passed the NFA pursuant to its taxation powers, and the NFA is contained in the Internal Revenue Code (Revenue Code).

4

machine guns"); *id*. at 4, 1986 U.S.C.C.A.N. at 1330 (describing machine guns as "used by racketeers and drug traffickers for intimidation, murder and protection of drugs and the proceeds of crime"). Congress enacted the FOPA "to strengthen the [GCA] to enhance the ability of law enforcement to fight violent crime." H. R. Rep. No. 99-495, at 1, 1986 U.S.C.C.A.N. at 1327.

Among its provisions, FOPA added 18 U.S.C. § 922(o) to the GCA. This section makes it "unlawful for any person to transfer or possess a machinegun" not lawfully possessed before the effective date of the FOPA. 18 U.S.C. § 922(o)(2). The FOPA and GCA specifically define the term "machinegun" by incorporating the definition of that term found in the NFA. *See* 18 U.S.C. § 921(a)(23). As amended by the GCA and the FOPA, the NFA defines a "machinegun" as:

> any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.

26 U.S.C. § 5845(b).

ATF has been delegated authority to promulgate regulations necessary to enforce the provisions of the GCA and NFA. *See* 18 U.S.C. § 926(a); 26 U.S.C. §§ 7801(a)(2)(A), 7805(a); *see* 28 CFR § 0.130(a)(1)-(2). It has also been granted authority to investigate and enforce criminal and regulatory violations of Federal firearms law. *See* 28 U.S.C. § 599A(b)(1).

## II.     ATF's Prior Classifications Of Bump Stocks

No Federal statute or regulation requires a firearms manufacturer or owner to obtain a classification letter from ATF. *See Sig Sauer, Inc. v. Brandon*, 826 F.3d 598, 599-600 (1st Cir.

2016). A manufacturer or owner may request ATF's view, however, in which case ATF may provide a classification letter indicating ATF's current position on a particular device, although such a classification is subject to change. *See* Bureau of Alcohol, Tobacco, Firearms and Explosives, National Firearms Act Handbook § 7.2.4 (2009).[4]

As detailed in the Final Rule, in 2002 and 2004, a Florida inventor asked ATF to determine whether the Akins Accelerator, a specific model of a bump stock that "uses an internal spring and the force of recoil to reposition and refire the rifle," would be classified as a machine gun under the NFA. *Akins v. United States*, 312 F. App'x. 197, 198 (11th Cir. 2009) (*per curiam*). ATF initially concluded it did not constitute a machine gun. *Id.* After receiving further requests to classify similar devices, ATF reversed its view, classifying the device as a machine gun. ATF ordered the inventor "to register the devices he possessed or to surrender them," *id.* at 199, and issued a policy statement concluding that "devices attached to semiautomatic firearms that use an internal spring to harness the force of the recoil so that the firearm shoots more than one shot with a single pull of the trigger are machineguns." Final Rule, 83 Fed. Reg. at 66,516. The inventor sued, and the Court of Appeals for the Eleventh Circuit upheld ATF's classification determination. *Akins*, 312 F. Appx. at 198. This Court subsequently concluded that the determination did not give rise to a compensable taking. *Akins v. United States,* 82 Fed. Cl. 619 (2008).

ATF subsequently received classification requests for other devices that, unlike the Akins Accelerator, did not include internal springs. In a series of classification decisions between 2008 and 2017, ATF concluded that these devices were not machine guns because, in the absence of

_____

[4] Available at https://www.atf.gov/firearms/docs/atf-national-firearms-act-handbook-chapter-7/download (last visited May 28, 2019).

internal springs or similar mechanical parts that would channel recoil energy, the bump stocks did not fire "automatically." Final Rule, 83 Fed. Reg. at 66,517. ATF has estimated that 520,000 bump stocks were sold at an estimated average price of approximately $300. *See id.* at 66,538.

## III.  **The Final Rule**

On October 1, 2017, a shooter in Las Vegas, Nevada, armed with rifles equipped with bump stocks fired hundreds of rounds of ammunition rapidly into a large crowd attending an outdoor concert, killing 58 people and wounding approximately 500. In the wake of this tragedy, the Department of Justice decided to revisit its analysis of the definition of the term machine gun in 26 U.S.C. 5845(b), and to reconsider whether bump stocks properly should be classified as machine guns. *See* Final Rule, 83 Fed. Reg. at 66,516-17. On March 29, 2018, the Department published a notice of proposed rulemaking, proposing changes to the regulations in 27 C.F.R. §§ 447.11, 478.11, and 479.11 concerning the application of the terms "single function of the trigger" and "automatically" to bump stocks. *See Bump-Stock-Type Devices*, 83 Fed. Reg. 13,442 (Mar. 29, 2018).

On December 26, 2018, the Final Rule was published in the Federal Register. *See* Final Rule, 83 Fed. Reg. 66,514.[5] The Final Rule concluded that "[t]he term 'machine gun' includes a [bump stock]," and overrules ATF's prior classification decisions treating bump stocks as

---

[5] The Final Rule amends ATF's regulations. The Final Rule was promulgated by the Attorney General and DOJ, who are responsible for overseeing ATF. *See* 28 C.F.R. § 0.130(a)(1). Although NFA provisions still refer to the "Secretary of the Treasury," *see* 26 U.S.C. ch. 53, the Homeland Security Act of 2002, Pub. L. 107-296, 116 Stat. 2135 (2002), transferred the functions of ATF from the Department of the Treasury to DOJ, under the general authority of the Attorney General. 26 U.S.C. § 7801(a)(2); 28 U.S.C. § 599A(c)(1).

unregulated firearms parts.  *Id.* at 66,554; *see id.* at 66,516, 66,531.  The Rule explained that the

government would not take enforcement action for 90 days, to give possessors of bump stocks

time to destroy the devices or abandon them at the nearest ATF office.  *Id.* at 66,549.[6]

## IV.  **Plaintiffs' Allegations**

According to the amended complaint, plaintiff The Modern Sportsman, LLC is a

Minnesota corporation and registered firearms dealer.  Am. Comp. ¶ 14.  The amended

complaint alleges that it is also a retailer of firearms, ammunition and firearm parts and

accessories, and regularly rents firearms at its range, including fully automatic weapons.  *Id.*  The

amended complaint alleges that plaintiff RW Arms, Ltd. is a Texas corporation, a registered

firearms dealer and a retailer of firearms, ammunition and firearm parts and accessories.  Am.

Comp. ¶ 15.  According to the amended complaint, Michael Stewart and Mark Maxwell are

residents of Tarrant County, Texas who allegedly relied upon previous ATF classifications to

purchase and own multiple bump-stocks "for both [their] personal use and for economic gain."

Am. Comp. ¶¶ 16-17.

Plaintiffs allege that manufacturers, retailers, and members of the public have relied upon

ATF's bump stock classification decisions.  Am. Comp. ¶ 23.  They allege that in 2006, certain

spring-loaded devices, including the Akins Accelerator, were classified as machine guns under

---

[6] Several lawsuits have been filed in Federal district courts seeking to enjoin the Government from proceeding with the Final Rule.  *See, e.g., Guedes et al. v. ATF*, 356 F.Supp.3d 109 (D.D.C. 2019), *aff'd* 920 F.3d 1 (D.C. Cir. 2019) (*per curiam*); *Gun Owners of America, Inc., et al. v. Barr, et al.*, No. 19-1298, 2019 WL 1395502 (6th Cir. Mar. 25, 2019).  These suits raise numerous legal challenges to the Final Rule including under the Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq. See Guedes*, 920 F.3d at 9.  Courts have uniformly denied preliminary injunctive relief in these cases upon determining that the plaintiffs failed to demonstrate a likelihood of success on the merits.  *See Guedes*, 920 F.3d at 1; *Gun Owners*, 2019 WL 1395502 at *1.

the GCA and NFA.  Am. Comp. ¶¶ 24-26.  They contend that ATF advised individuals that they could remove the internal spring of the Akins Accelerator, thus placing the device outside the classification of a machine gun and permitting the individual to retain the device.  Am. Comp. ¶ 27.  They allege that between 2008 and 2017, ATF issued many classification decisions concluding that other bump stocks that did not rely upon an internal spring were classified as firearm parts, and not machine guns.  Am. Comp. ¶¶ 5, 28-30.

Plaintiffs allege that the Final Rule "effectively took plaintiffs property without just compensation," Am. Comp. ¶ 46, and that it has destroyed "all economic value and all investment-backed expectations" in the bump stocks.  Am. Comp. ¶ 32.  Plaintiffs allege that they, respectively, destroyed and discarded the remaining scrap of between 25 and 73,462 bump stocks pursuant to the Final Rule.  Am. Comp. ¶¶ 39-43.  They seek unspecified compensation under the Fifth Amendment, attorney fees, and costs.  Comp., prayer for relief.[7]

## SUMMARY OF ARGUMENT

Courts have long made clear that a taking generally does not occur when the Government exercises its police power to take property or require its destruction in order to protect the public health and safety.  They have also made clear that a compensable taking does not occur when the Government takes property that is, or may be, subject to a statutory prohibition.

Both of those circumstances obtain here.  The Government has exercised its police power with respect to machine guns, a category of firearm so dangerous that it threatens the public safety.  No taking would have occurred even absent a statutory prohibition.  Here, however,

---

[7] Two lawsuits were previously filed in the Court of Federal Claims alleging that the Final Rule constitutes a Fifth Amendment taking of property.  *See McCutchen et al. v. United States*, no. 18-1965, *Rouse et al. v. United States*, no. 18-1980.  The Government has moved to dismiss the complaints in both of those cases, and the cases are still pending.

plaintiffs' sole complaint is that the Government is enforcing a statutory bar on the transfer or possession of machine guns. In announcing that it would enforce that prohibition with regard to bump stocks that were not abandoned or destroyed, the Government did not incur a constitutional obligation to compensate their owners. To hold otherwise would require the Government to compensate individuals any time a law prohibits possession of property injurious to public health and safety, even if that property is, for example, child pornography or a newly synthesized addictive street drug. And even if the Court nevertheless believed it appropriate to analyze plaintiffs' claim under *Penn Central,* the character of the Government's action and the nature of plaintiffs' expectations would compel the conclusion that no compensable taking has occurred.

## ARGUMENT

### I. Standard of Review

"[A] complaint should be dismissed under RCFC 12(b)(6) 'when the facts asserted by the claimant do not entitle him to a legal remedy.'" *Akins,* 82 Fed. Cl. at 622. "In order to avoid dismissal for failure to state a claim, a complaint must allege facts 'plausibly suggesting (not merely consistent with)' a showing of entitlement to relief." *Acceptance Ins. Cos., Inc. v. United States*, 583 F.3d 849, 853 (Fed. Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 557 (2007)). In assessing the complaint, the Court "must accept as true all factual allegations in the complaint, and . . . indulge all reasonable inferences in favor of the non-movant." *Sommers Oil Co. v. United States*, 241 F.3d 1375, 1378 (Fed. Cir. 2001) (citations omitted). But the Court is not required to accept legal conclusions couched as factual allegations. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to avoid dismissal. *Id.*

## II. The Government's Determination that Bump Stocks Fall within the Statutory Prohibition on Machine Guns Did Not Effect a Compensable Taking

The Federal Circuit has explained that "[w]hile it is insufficient to avoid the burdens imposed by the Takings Clause simply to invoke the 'police powers' of the state," the Supreme Court has repeatedly recognized that there are certain exercises "of the police power that ha[ve] repeatedly been treated as legitimate even in the absence of compensation to the owners of the. . . property." *Acadia Tech., Inc. v. United States*, 458 F.3d 1327, 1332-33 (Fed. Cir. 2006). The Federal Circuit noted, for example, the Supreme Court's decision in *Miller v. Schoene,* 276 U.S. 272 (1928), in which Virginia had enacted a scheme for the condemnation and destruction of red cedar trees infected by cedar rust in order to prevent the transmission of the disease to apple trees in the area. *See id.* at 277. In holding that no compensable taking had occurred, the Supreme Court emphasized that "where the public interest is involved, preferment of that interest over the property interest of the individual, to the extent even of its destruction, is one of the distinguishing characteristics of every exercise of the police power which affects property." *Id.* at 279-280 (quoted in *Acadia Tech., Inc.,* 458 F.3d at 1333). These principles, the Federal Circuit observed, had been firmly entrenched even at the time of *Mugler v. Kansas*, 123 U.S. 623 (1887), in which the Supreme Court held that a state law outlawing manufacture and sale of alcoholic beverages did not constitute a taking of private property for public use: "A prohibition simply upon the use of property for purposes that are declared, by valid legislation, to be injurious to the health, morals, or safety of the community, cannot, in any just sense, be deemed a taking or an appropriation of property for the public benefit." 123 U.S. at 668-69; *see Acadia Tech., Inc.,* 458 F.3d at 1333.

Applying settled precedent, the Federal Circuit in *Acadia Technology* held that that a "[c]ustoms seizure of goods suspected of bearing counterfeit marks" was not a compensable taking and was, instead, "a classic example of the government's exercise of the police power to condemn contraband or noxious goods, an exercise that has not been regarded as a taking for public use for which compensation must be paid." *Id*. at 1332. That was the case even though the Government's actions reduced the value of the property to only scrap. The Court reached a similar conclusion in *AmeriSource Corp. v. United States*, 525 F.3d 1149 (Fed. Cir. 2008), where it considered whether "the Fifth Amendment's Takings Clause applies when the government seizes an innocent third party's property for use in a criminal prosecution but never introduces the property in evidence, and it is rendered worthless over the course of the proceedings." *Id*. at 1150. The Federal Circuit emphasized that "[p]roperty seized and retained pursuant to the police power is not taken for a 'public use' in the context of the Takings Clause." *See also id*. at 1153-54 ("the government seized the pharmaceuticals in order to enforce the criminal laws, a government action clearly within the bounds of the police power" and therefore insufficient for takings liability).

The Federal Circuit and this Court have made clear that these principles apply with full force in analyzing the impact of firearms regulations. In *Mitchell Arms, Inc. v. United States,* 7 F.3d 212 (Fed. Cir. 1993) the Court rejected takings claims brought by a business which had received a permit from ATF to import semiautomatic rifles, based on ATF's determination that the rifles were properly importable under a statutory provision authorizing the importation of firearms suitable for sporting purposes. *Id.* at 213-14. In reliance on the permits, the plaintiff purchased rifles and arranged for their importation. Before the importation took place, however, ATF suspended all permits for that category of assault rifles pending its reassessment of their

12

importability under the governing statute. When it concluded its reassessment, ATF revoked the permits.

The Federal Circuit analogized the case to *Allied–General Nuclear Services v. United States,* 839 F.2d 1572 (Fed. Cir. 1988), in which the Government denied the plaintiff a permit to operate a plutonium recycling plant after it had "actively promoted and induced the plaintiff's expenditure of over $200 million to build the plant." Based on its reconsideration of its policy regarding nuclear proliferation, the Government "refused to issue the expected operating permit, thereby rendering the plaintiff's investment useless." *Mitchell Arms*, 7 F.3d at 216. The Court in *Allied–General Nuclear Services* held that "no compensable taking had occurred, stating that 'the basic rule that is dispositive here is that as against reasonable state regulation, no one has a legally protected right to use property in a manner that is injurious to the safety of the general public.'" *Mitchell Arms*, 7 F.3d at 217 (quoting *Allied-General*, 839 F.2d at 1576). The Court in *Mitchell Arms* held that "[j]ust as Allied General's expectation of operating the plutonium recycling plant was found not to be a property right protected by the Fifth Amendment because it was subject to governmental regulation of nuclear facilities, so too Mitchell's expectation of selling its assault rifles in the United States was not such a property right because it was subject to governmental regulation of firearms importation under the Gun Control Act." *Id.*

This Court applied the same reasoning in *Akins v. United States,* 82 Fed. Cl. 619 (2008), in which, as in this case, ATF initially concluded that a firearm was not a machine gun for purposes of 18 U.S.C. § 922(o). After reviewing a sample of the device, known as the Akins Accelerator, ATF sent a letter informing the plaintiff that "the submitted stock assembly does not constitute a machinegun as defined in the [National Firearms Act]." *Id.* at 621. "Relying on ATF's classification," plaintiff "began producing and distributing the Akins Accelerators." *Id.*

13

More than three years later, ATF reconsidered its determination, concluded that the Akins Accelerator was a machine gun, and informed the plaintiff that "'[t]o the extent that the determination in this letter is inconsistent with [its prior letters], they are hereby overruled.'" *Id.*

Citing *Mugler* and its progeny, the Court explained that "[p]roperty seized and retained pursuant to the police power is not taken for a 'public use' in the context of the Takings Clause." *Akins*, 82 Fed. Cl. at 622 (quoting *AmeriSource*, 525 F.3d at 1153). The Court further held that, in any event, "Plaintiff's expectation interest in manufacturing and distributing Akins Accelerators to the public free from Federal regulation is not a property interest protected by the Fifth Amendment." *Id*. at 624. The Court cited the Federal Circuit's decision in *Mitchell Arms,* and noted the Supreme Court's teaching in *Lucas v. South Carolina Coastal Council* that "in the case of personal property, by reason of the State's traditionally high degree of control over commercial dealings, [one] ought to be aware of the possibility that new regulation might even render his property economically worthless." *Akins*, 82 Fed. Cl. at 623 (quoting *Lucas,* 505 U.S. 1003, 1027-28 (1992)). The Court observed that the plaintiff was fully aware of the "potential for federal regulation of his invention" and reiterated that its "expectation interest" was "not a property interest protected by the Fifth Amendment." *Id.* at 624.

A Federal district court in the District of Maryland reached a similar conclusion in a case involving a takings challenge to Maryland's ban on possession of bump stocks. *Maryland Shall Issue v. Hogan*, 353 F. Supp. 3d 400 (D. Md. 2018). The court there rejected the plaintiffs' contention that "states cannot completely ban any item of personal property, no matter how dangerous, and no matter how compelling the state's interest in doing so, without compensating all individuals in the state who happen to already own it," *id.* at 411, explaining that "this theory would entail a radical curtailment of traditional state police powers, one that flies in the face of a

long history of government prohibitions of hazardous contraband." *Id.* at 408-09. The court then noted that the principle that the Government may ban hazardous materials without compensation is consistent with "the long history of state laws that criminalize, ban, or otherwise restrict items deemed hazardous under the police power," citing state regulation of machine guns, explosive devices, controlled substances, child pornography, fireworks, and lead-based paint. *Id.* at 409.

In reaching its conclusion, the court in *Maryland Shall Issue* relied on Fourth Circuit precedent that would likewise bar this suit. In *Holliday Amusement Co. of Charleston v. South Carolina*, 493 F.3d 404, 405-06 (4th Cir. 2007), plaintiffs brought a takings challenge, alleging that a South Carolina law that banned video gaming machines (and subjected the machines to forfeiture) rendered their machines worthless and effected a compensable taking of their property. After determining that the claim was likely not ripe, the Fourth Circuit rejected the plaintiffs' claim on the merits. *Id.* at 409. The court of appeals cautioned against "push[ing] the notion of regulatory takings to the point that the most basic exercises of the police power become the subject of ever more expense and litigation." *Id.* at 410. The court recognized that the "point has particular force in this case [because] Plaintiff is not challenging an ordinary regulation of an ordinary business, but a law relating to gambling—an area in which the state traditionally enjoys wide latitude to regulate activity minutely or to outlaw it completely." *Id.*

Plaintiffs' claim in this suit is thus squarely foreclosed by precedent.[8] Even when property is not subject to close regulation—for example the ornamental red cedar trees in

---

[8] The observation in plaintiffs' complaint that "[u]nlike individual states, the federal government does not have a plenary police power," Am. Comp. ¶ 45, is true but irrelevant, as countless cases including *Mitchell Arms* and *Akins* make clear. The Federal Government does not have plenary power but it undoubtedly exercises police power when enforcing a federal statute as it is here. In any event, plaintiffs presumably do not challenge the Government's

*Miller*—a valid exercise of the police power to protect the public safety generally does not constitute a compensable taking.

And that principle applies with even greater force where, as here, a plaintiff tests the limits of a criminal prohibition in the highly regulated area of firearms. As this Court recognized in *Akins,* in such cases there can be no expectation that a prosecutor or agency will decline to enforce the law. Thus, in criminal prosecutions, a defendant is free to argue that his firearm does not fall within the definition of a machine gun, but he cannot disregard the possibility of such enforcement. *See, e.g., United States v. Camp,* 343 F.3d 743 (5th Cir. 2003) (reversing dismissal of indictment in case in which the defendant argued that the term "trigger" as used in the definition of machine gun did not "include[] a switch that starts a motor, causing a modified semiautomatic rifle to automatically fire more than one shot"). That the Government concludes at one point that property does not fall within the scope of a statutory prohibition, does not preclude it from changing its understanding of the proper application of the statute. And if it does, the Government is not put to the choice of foregoing enforcement of the law or else paying the value of the unlawful property.

Likewise, the fact that ATF may have issued certain classification decisions concerning bump stocks does not provide plaintiffs with a property right that Federal firearms laws including the GCA and NCA would be forever inapplicable to these devices. *See Akins*, 82 Fed. Cl. at 623-24. This is especially the case in the context of the firearms industry that is highly regulated, and subject to regulatory change. *See, e.g.,* 15 U.S.C. § 7901(a)(4) ("The

_____

authority to act, which is essential to a takings claim under the Tucker Act. *See Acadia Tech.,* 458 F.3d at 1330-31.

manufacture, importation, possession, sale, and use of firearms and ammunition in the United States are heavily regulated by Federal, State, and local laws.").

As the court in *Maryland Shall Issue* recognized, it cannot be ignored that the upshot of accepting plaintiffs' theory of the case is that the Government would be required to compensate owners for the value of *any* property the possession of which is deemed unlawful, no matter how harmful. This would even be true, for example, with respect to the Controlled Substances Act, which made unlawful numerous previously lawful substances, *See* Pub. L. No. 91–513, tit. II, 84 Stat. 1242 (1970) (codified as amended at 21 U.S.C. §§ 801–904, and delegates to the Attorney General the authority to ban new substances, *id.* § 811(a)). The fact, for example, that MDMA, also known as ecstasy, was lawful prior to its listing as a controlled substance in the 1980's, plainly does not mean that the government effected a compensable taking when it banned possession of the drug.[9]

### III.   Plaintiffs Fail To State A Regulatory Takings Claim Under *Penn Central*

The same result would obtain if the Court believed it were necessary to analyze plaintiffs' claim as a regulatory taking under the framework of *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104, 124 (1978), under which a court considers:  (1) the character of the government's actions, (2) the property holder's investment backed expectations, and (3) the economic impact on the property holder.  *Id.*  For the reasons discussed, the character of the government's actions, which is "crucial in takings analysis," *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 488 (1987), precludes a finding of a compensable taking.  As cases dating back to *Mugler* and *Miller* establish, a restriction "directed at the protection of public

---

[9] *See* https://www.deadiversion.usdoj.gov/schedules/orangebook/b_sched_chron.pdf (last visited May 28, 2019) (listing the effective dates of banned substances including MDMA).

health and safety . . . is the type of regulation in which the private interest has traditionally been most confined and governments are given the greatest leeway to act without the need to compensate those affected by their actions." *Rose Acre Farms, Inc. v. United States*, 559 F.3d 1260, 1281 (Fed. Cir. 2009).

It is equally clear that plaintiffs had no reasonable investment-backed expectation that their property would go unregulated. As discussed, the firearms industry is highly regulated, especially with regard to especially dangerous weapons like machine guns, which are outside the protections of the Second Amendment. *See District of Columbia v. Heller*, 554 U.S. 570, 627 (2008); *Hollis v. Lynch*, 827 F.3d 436, 448-49 (5th Cir. 2016); *United States v. One Palmetto State Armory PA-15 Machinegun*, 822 F.3d 136, 143 (3d Cir. 2016). And a plaintiff's "reasonable investment-backed expectations are greatly reduced in a highly regulated field." *Branch v. United States*, 69 F.3d 1571, 1581 (Fed. Cir. 1995); *see also Connolly v. Pension Ben. Guar. Corp.*, 475 U.S. 211, 227 (1986) ("Those who do business in the regulated field cannot object if the legislative scheme is buttressed by subsequent amendments to achieve the legislative end." (quoting *FHA v. The Darlington, Inc.*, 358 U.S. 84, 91 (1958)); *Holliday Amusement Co. of Charleston, Inc. v. South Carolina*, 493 F.3d 404, 411 n.2 (4th Cir. 2007) (explaining that the Supreme Court has admonished that "the owner of any form of personal property must anticipate the possibility that new regulation might significantly affect the value of his business" and "[g]iven the nature of plaintiff's business, he was well aware that the South Carolina legislature might not continue to look favorably upon it") (citing *Lucas v. S.C. Coastal Council,* 505 U.S. 1003, 1027 (1992)).

No reasonable investment-backed expectations could exist here. Plaintiffs were fully aware that their bump stocks, which are designed to mimic the firing rate of illegal machine

guns, might be machine guns within the meaning of the statute and that, at a minimum, they were

testing the border of the statutory definition. Plaintiffs' only contention in this regard is that they

relied on ATF classification letters issued to other applicants. Am. Comp. ¶¶ 5-6, 23-30. But as

ATF has long made clear, while such letters "may generally be relied upon by their recipients as

the agency's official position concerning the status of the firearms under Federal firearms laws,"

the "classifications are subject to change if later determined to be erroneous or impacted by

subsequent changes in the law or regulations." *See* Bureau of Alcohol, Tobacco, Firearms and

Explosives, National Firearms Act Handbook § 7.2.4 (2009). Indeed, the history of ATF's

consideration of the Akins Accelerator – which plaintiffs address in their amended complaint –

could leave plaintiffs with no doubt on this point. As discussed, ATF initially ruled that the

Akins Accelerator was not a machine gun, but reversed that ruling years later in the face of

additional evidence. *See Akins v. United States*, 312 F. App'x. 197, 198 (11th Cir. 2009). That

is what occurred here as well. Although certain non-spring based bump stocks were initially

classified as unregulated firearm parts, in the face of additional evidence and analysis, it was

determined that they were, and indeed always have been, machine guns under Federal criminal

law. As the Supreme Court has made clear, "an owner of personal property 'ought to be aware

of the possibility that new regulation might even render his property economically worthless.'"

*See Lucas*, 505 U.S. at 1027-28; *see also Rith Energy, Inc. v. United States*, 247 F.3d 1355, 1364

(Fed. Cir. 2001); *Ruckelshaus v. Monsanto*, 467 U.S. 986, 1005 (1984) (lack of interference with

investment-backed expectations may dispose of takings question).

## CONCLUSION

For these reasons, we respectfully request that the Court dismiss the amended complaint

for failure to state a claim upon which relief may be granted.

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

s/L. Misha Preheim
L. MISHA PREHEIM
Assistant Director

s/Nathanael B. Yale
OF COUNSEL:                          NATHANAEL B. YALE
MELISSA ANDERSON                     Trial Attorney
Associate Chief Counsel              Commercial Litigation Branch
Litigation                           Civil Division
Bureau of Alcohol, Tobacco,          U.S. Department of Justice
    Firearms and Explosives    P.O. Box 480
                                     Ben Franklin Station
                                     Washington, DC 20044
                                     Telephone: (202) 616-0464
                                     Facsimile:  (202) 353-0461

                                     *Attorneys for Defendant*

May 28, 2019