IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

19-449C
(Senior Judge Smith)

---

THE MODERN SPORTSMAN, LLC *ET AL.*,
Plaintiffs,

v.

THE UNITED STATES,
Defendant.

---

DEFENDANT'S REPLY BRIEF

---

JOSEPH H. HUNT
Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

L. MISHA PREHEIM
Assistant Director

OF COUNSEL:

MELISSA ANDERSON
Associate Chief Counsel
Litigation
Bureau of Alcohol, Tobacco,
    Firearms and Explosives

NATHANAEL B. YALE
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 616-0464
Nathanael.B.Yale@usdoj.gov

July 22, 2019                    Attorneys for Defendant

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................1

ARGUMENT .....................................................................................................................3

    I.    As Demonstrated In Our Motion To Dismiss, The Final Rule Did Not Effect A Compensable Taking ................................................................................3

    II.    The Final Rule Is Not A *Per Se* Taking .................................................................7

        A.    Plaintiffs Have Failed To Demonstrate A *Per Se* Physical Taking .............7

        B.    Plaintiffs Fail To State A *Per Se* Regulatory Takings Claim Under *Lucas* ................................................................................................13

    III.    Plaintiffs' Takings Theory Would Inhibit Government Regulation Of Property That Poses A Threat To Public Health And Safety ................................................16

    IV.    Whether The Final Rule Is Legislative Or Interpretive Is Not Material................17

CONCLUSION...................................................................................................................19

# TABLE OF AUTHORITIES

## Cases

*Abrahim-Youri v. United States,*
    139 F.3d 1462 (Fed. Cir. 1997)........................................................................................10

*Acadia Tech., Inc. v. United States,*
    458 F.3d 1327 (Fed. Cir. 2006).................................................................... passim

*Acceptance Ins. Co., v. United States,*
    583 F.3d 849 (Fed. Cir. 2009)........................................................................................10

*Akins v. United States,*
    82 Fed. Cl. 619 (2008) .................................................................................... passim

*Alimanestianu v. United States,*
    1888 F.3d 1374 (Fed. Cir. 2018)....................................................................................12

*Allied–General Nuclear Services v. United States,*
    839 F.2d 1572 (Fed. Cir. 1988)........................................................................................4

*AmeriSource Corp. v. United States,*
    525 F.3d 1149 (Fed. Cir. 2008)................................................................... passim

*Andrus v. Allard,*
    444 U.S. 51 (1979)..........................................................................................................15

*Ark. Game & Fish Com'n v. United States,*
    568 U.S. 23 (2012)..........................................................................................................14

*Bair v. United States,*
    515 F.3d 1323 (Fed Cir. 2008)........................................................................................10

*Branch v. United States,*
    69 F.3d 1571 (Fed. Cir. 1995)..........................................................................................6

*Caldwell v. United States,*
    391 F.3d 1226 (Fed. Cir. 2004)........................................................................................8

*Chevron, U.S.A. Inc. v. Natural Res. Def. Council, Inc.,*
    467 U.S. 837 (1984)........................................................................................................18

*Chrysler Corp v. Brown,*
    441 U.S. 281 (1979)........................................................................................................18

*Del-Rio Drilling Programs Inc. v. United States,*
    146 F.3d 1358 (Fed. Cir. 1998)........................................................................19

*Duncan et al. v. Becerra,*
    366 F. Supp. 3d 1131 (S.D. Cal. 2019)............................................................17

*Guedes et al. v. ATF et al.,*
    920 F.3d 1 (D.C. Cir. 2019)..........................................................................2, 18

*Holliday Amusement Co. of Charleston v. South Carolina,*
    493 F.3d 404 (4th Cir. 2007) ............................................................................5

*Horne v. Dept. of Agric.,*
    135 S. Ct. 2419 (2015)........................................................................... passim

*James Everards' Breweries v. Day,*
    265 U.S. 545 (1924)........................................................................................ 13

*Kam-Almaz v. United States,*
    682 F.3d 1364 (Fed. Cir. 2012)...................................................................... 11

*Keystone Bituminous Coal Ass'n v. DeBenedictis,*
    480 U.S. 470 (1987).........................................................................................13

*Lingle v. Chevron U.S.A. Inc.,*
    544 U.S. 528 (2005)...........................................................................................8

*Loretto* v. *Teleprompter Manhattan CATV Corp.,*
    458 U.S. 419 (1982)...........................................................................................9

*Lucas v. S.C. Coastal Council,*
    505 U.S. 1003 (1992).........................................................................2, 7, 13-15

*Maritrans Inc. v. United States,*
    342 F.3d 1344 (Fed. Cir. 2003).................................................................13, 14

*Maryland Shall Issue v. Hogan,*
    353 F. Supp. 3d 400 (D. Md. 2018) ............................................................ 5, 17

*Miller v. Schoene,*
    276 U.S. 272 (1928).....................................................................................3, 13

*Mitchell Arms, Inc. v. United States,*
    7 F.3d 212 (Fed. Cir. 1993) ..........................................................................4, 10

*Mugler v. Kansas,*
    123 U.S. 623 (1887) ........................................................................................... 3, 13

*Penn Central Transportation Co. v. City of New York,*
    438 U.S. 104 (1978) ............................................................................ 1, 2, 5-6, 14

*Rith Energy, Inc. v. United States,*
    247 F.3d 1355 (Fed. Cir. 2001) ................................................................................ 19

*Rose Acre Farms, Inc. v. United States,*
    373 F.3d 1177 (Fed. Cir. 2004) ........................................................................... 13, 19

*SmithKline Beecham Corp. v. Apotex Corp.,*
    439 F.3d 1312 (Fed. Cir. 2006) ................................................................................. 5

*United States v. Pewee Coal Co.,*
    341 U.S. 114 (1951) ................................................................................................. 8

**Statutes**

5 U.S.C. § 701 ................................................................................................................ 8

18 U.S.C. § 922(o) ............................................................................................... 1, 5, 6, 8

**Rules**

RCFC 12(b)(6) ................................................................................................................ 1

**Regulations**

83 Fed. Reg. 66,514 (Dec. 26, 2018) ............................................................... passim

## DEFENDANT'S REPLY BRIEF

Pursuant to Rule 12(b)(6) of the Rules of the United States Court of Federal Claims (RCFC), defendant, the United States, respectfully submits this reply brief in support of our motion to dismiss the amended complaint of plaintiffs The Modern Sportsman, LLC; RW Arms, Ltd.; Mark Maxwell; and Michael Stewart.

## INTRODUCTION

On October 1, 2017, a perpetrator in Las Vegas, Nevada using several rifles attached with bump stocks fired rapidly and repeatedly into an outdoor concert, killing 58 people and wounding approximately 500 others.  In response, the Department of Justice's (DOJ) Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) issued the regulation at issue here, *Bump-Stock-Type Devices*, 83 Fed. Reg. 66,514 (Dec. 26, 2018) (Final Rule), explaining that bump stocks are machine guns under 18 U.S.C. § 922(o), the Federal statute prohibiting the manufacture and sale of machine guns to the public.

In their amended complaint, plaintiffs contend that the government effectuated a taking by determining that bump stocks are machine guns.  But, as demonstrated in our motion to dismiss, a long line of precedent forecloses this argument, and the complaint fails to state a claim.  It is established that the federal government may prohibit the use and possession of articles that threaten the public safety.  That use of the articles may previously have been sanctioned does not convert a prohibition into a taking.  Were it otherwise, the government would be hamstrung in responding to new information and developments.  Even assuming, arguendo that the prohibition on bump stocks was properly subject to a takings analysis, the government's action would be reviewed under the standard in *Penn Central Transportation Co.*

*v. City of New York*, 438 U.S. 104, 124 (1978).  Implicitly recognizing that they cannot establish a takings claim under this standard, plaintiffs make no attempt to satisfy the standard.

Unable to articulate a plausible claim under relevant precedent, plaintiffs mistakenly seek to characterize the prohibition as a physical taking under *Horne v. Department of Agriculture*, 135 S. Ct. 2419 (2015), or a categorical taking under *Lucas v. S.C. Coastal Council*, 505 U.S. 1003 (1992).  Plaintiffs identify no case that even remotely resembles the prohibition here, in which any court has applied either doctrine.  This case involves the prohibition of extremely dangerous weapons, not the transfer of raisins to the federal government, as in *Horne*.  Even if the government had physically seized the bump stocks at issue, no taking would exist.  Such a seizure would be no different from cases we identified in our motion where courts held no taking had occurred even where the government took physical possession of the personal property.  *See Acadia Tech., Inc. v. United States*, 458 F.3d 1327, 1332-33 (Fed. Cir. 2006).  And the analogy to *Lucas* would fail, even if the Supreme Court had applied that case to personal property of the kind at issue here, which it has not.  Indeed, bump stocks are exactly the type of personal property that the *Lucas* Court envisioned that individual owners should expect may be subject to regulation that renders the property valueless.

Finally, plaintiffs rely heavily on the determination by the D.C. Circuit's decision in *Guedes et al. v. ATF et al.,* 920 F.3d 1 (D.C. Cir. 2019) (*per curiam*) that the Final Rule was a legislative rule instead of an interpretive rule.  The Court need not decide that issue in this case, nor is the distinction material to our motion.  Regardless of whether it was lawful to own a bump stock before the Final Rule, the proper focus of the Court's inquiry is on the government's action, which, in this case is the explanation that bump stocks fall within the statutory prohibition on machine guns and the stated intent to begin enforcing the law.  As we demonstrated in our

2

motion, the upshot of plaintiffs' contention that the Rule effected a taking because it prohibited bump stocks is that any new law banning a dangerous product would constitute a compensable taking, an argument contradicted by common sense, and precedent.

## ARGUMENT

**I.     As Demonstrated In Our Motion To Dismiss, The Final Rule Did Not Effect A Compensable Taking**

As demonstrated in our motion, a long line of precedent precludes finding a taking here. Def. Mot. 9-19.

The Federal Circuit has recognized that, under Supreme Court precedent, there are certain exercises "of the police power that ha[ve] repeatedly been treated as legitimate even in the absence of compensation to the owners of the. . . property." *Acadia Tech.,* 458 F.3d at 1332-33. The Federal Circuit traced the doctrine's rationale to the Supreme Court's decisions in *Miller v. Schoene,* 276 U.S. 272 (1928), in which Virginia had enacted a scheme for the condemnation and destruction of red cedar trees infected by cedar rust to prevent the transmission of the disease to apple trees in the area, s*ee id.* at 277-79, and *Mugler v. Kansas*, 123 U.S. 623 (1887), in which the Supreme Court held that a state law outlawing the manufacture and sale of alcoholic beverages did not constitute a taking.  As the Supreme Court articulated the doctrine, "[a] prohibition simply upon the use of property for purposes that are declared, by valid legislation, to be injurious to the health, morals, or safety of the community, cannot, in any just sense, be deemed a taking or an appropriation of property for the public benefit."  123 U.S. at 668-69; *see Acadia Tech., Inc.,* 458 F.3d at 1333.

The Federal Circuit has applied this precedent in situations where federal law enforcement has acted pursuant to seizure statutes, and criminal laws, to find that no

compensable taking exists. *AmeriSource Corp. v. United States*, 525 F.3d 1149, 1154 (Fed. Cir. 2008); *Acadia Tech., Inc.,* 458 F.3d at 1333. In doing so, the court emphasized that "[p]roperty seized and retained pursuant to the police power is not taken for a 'public use' in the context of the Takings Clause." *AmeriSource*, 525 F.3d at 1153. In these decisions, the Federal Circuit upheld this Court's findings of no taking irrespective of whether the government had physically seized the property, or rendered it worthless. *AmeriSource*, 525 F.3d at 1153-54; *Acadia*, 458 F.3d at 1333.

The Federal Circuit and this Court have also made clear that these principles apply with full force in analyzing the impact of firearms regulations. In *Mitchell Arms, Inc. v. United States,* 7 F.3d 212 (Fed. Cir. 1993), the Federal Circuit rejected a takings claim brought by a firearms business whose permits to import semi-automatic rifles were revoked. In rejecting the claim, the court compared the case to *Allied–General Nuclear Services v. United States*, 839 F.2d 1572 (Fed. Cir. 1988), where the Federal Circuit emphasized that "'the basic rule that is dispositive here is that as against reasonable state regulation, no one has a legally protected right to use property in a manner that is injurious to the safety of the general public.'" *Mitchell Arms*, 7 F.3d at 217 (quoting *Allied-General*, 839 F.2d at 1576).

Similarly, in *Akins v. United States,* 82 Fed. Cl. 619 (2008), the case most directly analogous to this one, this Court rejected takings claims, including a *per se* taking claim, after ATF reconsidered its prior classification decisions regarding the Akins Accelerator. The Court explained that "[p]roperty seized and retained pursuant to the police power is not taken for a 'public use' in the context of the Takings Clause." *Akins*, 82 Fed. Cl. at 622 (quoting *AmeriSource*, 525 F.3d at 1153). And, citing *Mitchell Arms*, the *Akins* Court also found that the plaintiff was fully aware of the "potential for federal regulation of his invention" and his

4

"expectation interest" was "not a property interest protected by the Fifth Amendment." *Id.* at 624. As demonstrated in our motion, relevant decisions of other courts similarly show that the Final Rule raises no valid Fifth Amendment takings claim. *See Maryland Shall Issue v. Hogan*, 353 F. Supp. 3d 400 (D. Md. 2018) (upholding state ban on bump stocks); *Holliday Amusement Co. of Charleston v. South Carolina*, 493 F.3d 404, 405-06 (4th Cir. 2007) (upholding ban on video gaming machines, and subjecting them to forfeiture).

It is immaterial to the takings analysis whether the Final Rule is viewed as announcing an intent to enforce the statutory prohibition against machine guns found in 18 U.S.C. § 922(o), or in more generally requiring the destruction of bump stocks to protect public health and safety.

These decisions compel rejection of plaintiffs' claim. The prohibition on banning the possession and transfer of machine guns, including the weapons used in the Las Vegas tragedy, effected no taking. Plaintiffs attempt to make much of the fact that the prohibition meant that they needed to turn the bump stocks into ATF or otherwise destroy them. But that is the consequence of a prohibition on possession and transfer. The prohibition takes nothing for the government's use; it simply bans the possession of extraordinarily dangerous weapons.

Even assuming that a takings analysis were appropriate at all, the prohibition would be analyzed under *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104, 124 (1978), and the result would be the same. Under *Penn Central,* a court considers: (1) the character of the government's actions, (2) the property holder's investment backed expectations, and (3) the economic impact on the property holder. *Id.*

Plaintiffs make no attempt to explain how the prohibition on bump stocks could constitute a taking under *Penn Central*. Plaintiffs have thus effectively waived any argument on this score, *see SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1320 (Fed. Cir.

2006), and, in any event, their failure to present a developed argument simply reflects the fact that any such contention would be insubstantial. Regardless, as we explain, no taking exists under *Penn Central*.

A restriction "directed at the protection of public health and safety . . . is the type of regulation in which the private interest has traditionally been most confined and governments are given the greatest leeway to act without the need to compensate those affected by their actions." *Rose Acre Farms, Inc. v. United States*, 559 F.3d 1260, 1281 (Fed. Cir. 2009). And, as we demonstrated, Def. Mot. 18-19, plaintiffs had no reasonable investment-backed expectation that their property would go unregulated. A plaintiff's "reasonable investment-backed expectations are greatly reduced in a highly regulated field," *Branch v. United States*, 69 F.3d 1571, 1581 (Fed. Cir. 1995), such as the firearms industry. Plaintiffs were fully aware that their bump stocks, might be considered machine guns within the meaning of the statute and that, at a minimum, the devices tested the border of the statutory definition. As the Court emphasized in *Akins,* the gun owner in that case had no reasonable expectation that possession of his firearms would be permitted indefinitely, notwithstanding the fact that ATF initially informed him that the weapons were not machine guns within the meeting of § 922(o). Like the plaintiff in *Akins,* plaintiffs relied in their Complaint on ATF classification letters, in this case letters issued to other applicants. Am. Comp ¶¶ 4-6, 23-30. Although such letters "may generally be relied upon by their recipients as the agency's official position concerning the status of the firearms under Federal firearms laws," the "classifications are subject to change if later determined to be erroneous or impacted by subsequent changes in the law or regulations." *See* Bureau of Alcohol, Tobacco, Firearms and Explosives, National Firearms Act Handbook § 7.2.4 (2009). In their opposition, plaintiffs retreat from relying on these letter rulings, and rightfully so. As the

6

Supreme Court has made clear, "an owner of personal property 'ought to be aware of the possibility that new regulation might even render his property economically worthless.'" *See Lucas*, 505 U.S. at 1027-28.  The fact that ATF previously issued certain classification decisions concerning bump stocks did not provide plaintiffs with a property right that federal firearms laws would be forever inapplicable to these devices.  *See Akins*, 82 Fed. Cl. at 623-24.  If it did, the government would be required to compensate owners for the value of any property, no matter how harmful.  This is not the law, nor should it be.

## II.     The Final Rule Is Not A *Per Se* Taking

In their opposition, plaintiffs cite no case awarding relief for a takings claim in analogous circumstances.  Unable to present a plausible case under applicable precedent, plaintiffs assert that the Final Rule is (1) a *per se* physical taking; (2) and a *per se* regulatory taking under *Lucas*.  As explained below, each of these contentions lack merit.

### A.     Plaintiffs Have Failed To Demonstrate A *Per Se* Physical Taking

Plaintiffs primarily contend that the Final Rule constitutes a *per se* physical taking of their bump stocks and that, therefore, the government has a categorical duty to pay compensation regardless of the government interests involved in enforcing the criminal prohibition on bump stocks.  Pl. Opp. 6-7.  That is incorrect.

As a preliminary matter, plaintiffs failed to plead a *per se* physical takings claim in their amended complaint, the theory they now primarily espouse.  Instead, they focused their amended complaint on allegations concerning prior classification letters concerning bump stocks, and how the Final Rule allegedly destroyed all economic value and investment-backed expectations.  *See* Am. Comp. ¶¶ 1-7; 20-33; 46-50.  In their opposition brief, plaintiffs imply that they raised a *per se* physical takings claim based upon their use of the words surrender and destroy.  *See* Pl. Opp.

7

6; Am. Comp. ¶¶ 39-42.  In any event, even if the Court were to overlook plaintiffs' pleading infirmities (which the Court should not), plaintiffs fail to state a *per se* physical takings claim.

In making their physical takings argument, plaintiffs (1) misinterpret Supreme Court precedent that plainly did not address the regulation of dangerous personal property, and (2) mistakenly equate enforcement of a statutory prohibition on the possession of personal property with a physical invasion or appropriation.  According to plaintiffs, the Final Rule "actually *physically* took the tangible property itself," and "Plaintiffs were left with nothing."  Pl. Opp. 7 (emphasis in original).  But the Final Rule did not mandate that the government physically *invade* plaintiffs' property, nor did it require the physical *appropriation* of plaintiffs' bump stocks for the government's use.  *See Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 537-38 (2005); *United States v. Pewee Coal Co.,* 341 U.S. 114, 115-17 (1951).[1]  ATF declared that bump stocks are machine guns, and therefore illegal to possess.  Final Rule, 83 Fed. Reg. at 66,514-16, 66,553-54.  The nature of that determination is no different than would have been the case if ATF, in response to original applicant inquiries, had stated that the bump stocks fell within the scope of § 922(o).  The Final Rule states that "current possessors" of bump stocks should "undertake destruction of the devices" or "abandon [them] at the nearest ATF office," *id.*

---

[1] In a footnote, plaintiffs selectively quote a Federal Circuit decision determining the accrual date for a taking of real property under the Rails to Trails Act as setting forth the definition of "physical appropriation."  Pl. Opp. 10 n.4 (quoting *Caldwell v. United States*, 391 F.3d 1226, 1235 (Fed. Cir. 2004)).  According to plaintiffs, all that is required for a physical appropriation is that an owner is deprived of valuable property rights.  *Id*.  But plaintiffs omit the portion of the opinion stating that the "government entered into physical possession of the land."  *See Caldwell*, 391 F.3d at 1235.

at 66549.  As noted, that is a natural consequence of the fact that the bump stocks cannot lawfully be possessed.  The government took nothing for its own use.[2]

Plaintiffs' reliance upon the Supreme Court's decision in *Loretto* v. *Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982), likewise only underscores the absence of a physical taking in this case.  The *Loretto* decision states nothing about regulating or banning the possession of inherently dangerous personal property.  Instead, *Loretto* involved a challenge to a state law requiring a landlord to install cable television facilities on the landlord's building.  The Court found a *per se* physical taking based upon the physical invasion of the landlord's property.

Plaintiffs' reliance on *Horne v. Department of Agriculture*, 135 S.Ct. 2419 (2015), *see* Pl. Opp. 7, similarly illustrates the error of their analysis.  The Court in *Horne* applied *Loretto's* physical takings analysis to personal property, and found that a physical taking occurred because the government had engaged in a "physical appropriation" of raisins.  *Id.* at 2427.  In finding a "clear physical taking," the Court focused on the fact that "raisins are transferred from the growers to the Government," and that "[t]itle to the raisins passes" to the government.  *Id.* at 2428.  Here, in contrast, the government has not required that plaintiffs transfer title for their bump stocks to the government, and has not otherwise physically invaded plaintiffs' property.

Moreover, even assuming that the prohibition in this case could be re-conceptualized to fall within a physical takings analysis, it would still be necessary to determine the nature of the property interest purportedly invaded.  Plaintiffs' physical takings argument incorrectly assumes

---

[2] Throughout their amended complaint and their opposition brief, plaintiffs contend that the Final Rule required that plaintiffs "surrender" their bump stocks.  This is incorrect.  Although the distinction is not material to our arguments, the Final Rule allowed for either destruction or "abandonment" of the bump stocks.  *See* Final Rule, 83 Fed. Reg. 66,549.  There is no basis to conclude that the government used the Final Rule to obtain ownership of the devices.

that, because plaintiffs had been allowed to possess bump stocks, this right to physical possession of the devices would continue infinitum, regardless of whether the government decided to prohibit them to protect public health and safety.  It is well settled "that existing rules and understandings and background principles derived from an independent source, such as state, federal, or common law, define the dimensions of the requisite property rights for the purposes of establishing a cognizable taking." *Acceptance Ins. Co.*, *v. United States*, 583 F.3d 849, 857 (Fed. Cir. 2009) (quotation marks omitted); *see Bair v. United States*, 515 F.3d 1323, 1329 (Fed Cir. 2008) (stating that a Federal statute can constitute a "'background principle' that inheres in the title to property interests arising after its enactment, therefore precluding a takings claim based on the application of the statute to those property interests") (citations omitted)); *Abrahim-Youri v. United States*, 139 F.3d 1462, 1468 (Fed. Cir. 1997) ("Certain sticks in the bundle of rights that are property are subject to constraint by government, as part of the bargain through which the citizen otherwise has the benefit of government enforcement of property rights.").   As we showed in our motion, and as cases such as *Mitchell Arms* and *Akins* make clear, no individual has the right to use property that has been determined to be dangerous to the public, and plaintiffs' property rights were always subject to the pervasive Federal regulation of firearms.  Def. Mot. 12-14.[3]

---

[3] Plaintiffs seek to distinguish *Mitchell Arms* on the ground that the plaintiff in that case kept possession of its rifles, and that the case only involved property interests in business expectations.  Pl. Opp. 18-20.  But the relevant point is that firearms are not immune from the police power doctrine, are subject to pervasive Government regulation, and that no individual has a property right in endangering the public.  Def. Mot. 12-14.  Thus, when the Government's application of Federal firearms law changes because, for example, a firearm has been deemed unlawful and inherently dangerous, no individual has the expectation of maintaining property.

Moreover, even the physical seizure of highly regulated goods has never been thought to constitute a *per se* taking.  *See Kam-Almaz v. United States*, 682 F.3d 1364, 1372 (Fed. Cir. 2012); *AmeriSource Corp. v. United States*, 525 F.3d 1149, 1153 (Fed. Cir. 2008); *Acadia Tech., Inc. v. United States*, 458 F.3d 1327, 1332-33 (Fed. Cir. 2006).  In *Acadia*, the plaintiff sought to import cooling fans, which U.S. Customs and Border Protection physically seized as counterfeit. 458 F.3d at 1329.  The Federal Circuit affirmed this Court's dismissal of plaintiff's taking claim, finding that when "property has been seized pursuant to the criminal laws or subject to in rem proceedings, such deprivations are not 'takings' for which the owner is entitled to compensation."  *Id*. at 1332.  Similarly, in *AmeriSource*, the government physically seized drugs from a third party, including a delivery of drugs from plaintiff.  525 F.3d at 1150.  The Court rejected plaintiff's taking claim, finding that "the government seized the pharmaceuticals in order to enforce the criminal laws, a government action clearly within the bounds of the police power."  *Id*. at 1153-55.

In another Federal Circuit decision, *Kam-Almaz*, the plaintiff was detained at Dulles International Airport by agents of U.S. Immigration and Customs Enforcement after returning from an overseas business trip, and his laptop containing business files was seized.  682 F.3d at 1366.  The plaintiff sued in this Court alleging that the government's seizure constituted a physical taking.  This Court dismissed for failure to state a claim, and the Federal Circuit affirmed.  *Id*. at 1370-71.  The Federal Circuit, relying upon *Acadia* and *AmeriSource*, focused on the nature of the government action, concluding that property seized pursuant to the police power is not taken in the context of the Takings Clause.  *Id*. at 1371.  Similarly, in *Akins*, ATF reevaluated the Akins Accelerator, and found it to be a machine gun under the GCA and NCA. *Akins v. United States,* 82 Fed. Cl. 619, 621 (2008).  ATF then required the recoil spring in the

11

device to be removed from all Akins Accelerators. *Id*. The plaintiff brought a physical takings claim based upon the required removal and surrender of the recoil springs. *Id*. at 622. This Court granted the government's motion to dismiss, holding that, "[a]s ATF was acting pursuant to the police power conferred on it by Congress, Plaintiff's complaint fails to state a compensable takings claim under the Fifth Amendment." *Id*. at 623 (citing *AmeriSource Corp.*, 525 F.3d at 1154.

In each of these cases, even though the government *physically* took possession of the plaintiffs' property, the Court found no cognizable takings claim after applying the police power doctrine. These cases demonstrate that the police power doctrine does not yield in the face of the government taking physical possession of property, a step even further removed from plaintiffs' allegations of destruction, Am. Comp. ¶¶ 39-42, in this case. *Cf. Alimanestianu v. United States*, 888 F.3d 1374, 1383 (Fed. Cir. 2018) (finding that irrespective of the *per se* language in *Horne*, there are certain government actions that do not constitute a taking).

Plaintiffs attempt to distinguish *Acadia* and *AmeriSource,* contending that such decisions only apply to property that was the instrumentality of a crime or evidence in a criminal prosecution. Pl. Opp. 11-12. Plaintiffs assert that in "both cases, the property taken by the Government was itself implicated in unlawful activity." Pl. Opp. 11. Neither case specifically limits its underlying rationale to situations where the property was the instrumentality of a criminal act or evidence in a criminal proceeding. Instead, in rejecting taking challenges, *Acadia* and *AmeriSource* describe the police power doctrine in broad terms, focusing on the government's efforts to protect public safety by seizing personal property. *See AmeriSource Corp.*, 525 F.3d at 1153-54; *Acadia Tech* 458 F.3d at 1332-33. Regardless, the Final Rule does

12

directly connect plaintiffs' bump stocks to Federal criminal law as the Final Rule deemed them to be inherently dangerous weapons.

Similarly, plaintiffs' attempts to distinguish *Mugler* and *Miller* lack merit.  *See* Pl. Opp. 8-10.[4]  Plaintiffs argue that the cases are old, are not *per se* physical takings cases, and that in *Lucas*, the Supreme Court limited the cases to regulatory, not physical takings claims.  Pl. Opp. 8-10.  That *Mugler* and *Miller* are seminal decisions highlights their significance, and they continue to be relied upon, including by the Federal Circuit in cases where the government has seized property.  *See Acadia Tech*, 458 F.3d at 1332-33.

### B.   Plaintiffs Fail To State A *Per Se* Regulatory Takings Claim Under *Lucas*

Plaintiffs contend that they have demonstrated a *Lucas* categorical regulatory taking, which plaintiffs say occurs "where the state seeks to sustain regulation that deprives land of all economically beneficial use."  Pl. Opp. 24.  Plaintiffs' argument fails in all respects.

First, the *Lucas* test has not been applied to valid exercises of the government's police power in enforcing the criminal laws.  This is the case even where personal property may become worthless as a result of the government's action.  *See AmeriSource*, 525 F.3d at 1154; *Akins*, 82 Fed. Cl. at 621-23.  *Lucas* also does not apply to the regulation of personal property of the type involved in this case.[5]  The Supreme Court has never held that a ban on possessing

---

[4] Plaintiffs' other attempts to distinguish the two cases lack merit.  Plaintiffs insist that *Miller* was only a Due Process Clause case.  Pl. Opp. 9.  The Supreme Court disagrees.  *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 490 (1987).  Plaintiffs contend that there was no evidence that the alcohol in *Mugler* was required to be destroyed.  Pl. Opp. 9-10.  But the Supreme Court did not find a taking where that very factual scenario played out during Prohibition, and the alcohol was required to be destroyed.  *See James Everards' Breweries v. Day*, 265 U.S. 545, 556, 563 (1924).

[5] The Federal Circuit has applied the *Lucas* analysis to certain personal property.  *See Rose Acre Farms, Inc. v. United States*, 373 F.3d 1177, 1196-98 (Fed. Cir. 2004) (eggs); *Maritrans Inc. v.*

dangerous personal property constitutes a *per se* taking under *Lucas* (or any *per se* test).  The Supreme Court has explained that the categorical takings analysis applies only in the "relatively rare" and "extraordinary circumstance when no productive or economically beneficial ***use of land*** is permitted."  *Lucas*, 505 U.S. at 1017-18 (emphasis added).  Although the Court has had reason to consider *Lucas* on multiple occasions, it has never applied the rule to any type of property rights other than real property.  *See Ark. Game & Fish Com'n v. United States*, 568 U.S. 23, 31-32 (2012) (citing *Penn Central*, 438 U.S. at 124).  This makes sense.  A regulation that deprives an owner of all use of his or her land is an exceptional circumstance because, "while an owner of personal property 'ought to be aware of the possibility that new regulation might even render his property economically worthless,' such an 'implied limitation' was not reasonable in the case of land."  *Horne v. Dept. of Agric.*, 135 S. Ct. 2419, 2427 (2015) (quoting *Lucas*, 505 U.S. at 1027-28).  Thus, the *Lucas* categorical takings analysis does not apply here.  When the *Lucas* Court recognized that the owner of personal property "ought to be aware of the possibility that new regulation might even render his property economically worthless," 505 U.S. at 1027-28, personal property owners, including plaintiffs have been on notice that a new regulation might render their property worthless.  This is especially true in a highly regulated industry such as the firearms industry.

In their opposition, plaintiffs contend that in differentiating land from personal property *Lucas* discussed the state's "traditionally high control over *commercial* dealings,"  Pl. Opp. 25

---

*United States*, 342 F.3d 1344, 1353-55 (Fed. Cir. 2003) (oil tankers).  But the Supreme Court has never awarded compensation under *Lucas* to the owners of personal property, and the Federal Circuit has never applied the *Lucas* analysis to the sort of dangerous personal property at issue here.  Neither court has suggested the *Lucas* presumptions have any bearing under these circumstances.

14

(emphasis in original), and did not point out a new regulation "might demand the surrender or destruction of his property." Pl. Opp. 25. Based upon this language, plaintiffs make the specious argument that "[p]rivate ownership of tangible property is not commercial dealing," and that therefore the language we identified in *Lucas* is inapplicable to bump stock possession, as opposed to sale or manufacture. *Id.* As a preliminary matter, it is difficult to imagine how plaintiffs, who include two commercial dealers and retailers with over 70,000 bump stocks, Am. Comp. ¶¶ 9-10, can contend that their bump stocks are not the product of commercial dealing. But, in reality, bump stocks are exactly the type of personal property recognized by *Lucas* as subject to regulation by the government, even to the point of rendering them valueless – tangible commercial personal property in a highly regulated environment.

Finally, plaintiffs assert that the Supreme Court's decision in *Andrus v. Allard*, 444 U.S. 51 (1979), a non-categorical takings case, supports its argument. Pl. Opp. 25-26. Plaintiffs' argument appears to be that prohibiting the possession of personal property is a *per se* taking under *Lucas*. In *Andrus*, the Supreme Court upheld regulations issued by the Department of the Interior prohibiting the sale of eagle parts. Although the Court in *Andrus* noted that it was crucial under this particular regulatory takings analysis that individuals were permitted to continue to possess the bird parts, *Andrus*, 444 U.S. at 66, at no point does the case hold or suggest that a ban on possessing personal property constitutes a *per se* taking, nor was *Andrus* addressing whether continued possession would be an important factor in addressing a health and safety regulation.

### III. Plaintiffs' Takings Theory Would Inhibit Government Regulation Of Property That Poses A Threat To Public Health And Safety

As demonstrated in our motion, if accepted by the Court, plaintiffs' legal theory would unduly burden the government's ability to regulate dangerous products. Def. Mot. 17. Plaintiffs accuse the government of "fear-mongering," insisting that finding a taking here would be limited to this case. Pl. Opp. 23. Plaintiffs assert that we have not "come close to articulating the nuance of what Plaintiffs are asking the Court to do." Pl. Opp. 22. They contend that takings "are fact specific inquiries," then explain the "nuance" of their position – creation of a *per se* rule that even if the government can deem property unlawful, it cannot require its surrender or destruction. Pl. Opp. 22-23. Plaintiffs prove our point – accepting their rationale would directly impede the government's ability to regulate personal property that poses a threat to public health and safety. That is because under plaintiffs' argument, no matter how dangerous the personal property, plaintiffs must be allowed to continue to possess the property or receive compensation. This would be the case even though, as here, the reason why the government has required the property's destruction or abandonment was that it posed such a threat of harm that continued possession was not an option. *See* Final Rule at 66,535-66,536. The position embraced by plaintiffs is not the law, nor has any Court ever found it to be the law. Certainly, plaintiffs' invocation of language from *Horne* that "the Constitution is concerned with means as well as ends," Pl. Opp. 22, provides no support for plaintiffs' new theory of takings law. If anything *Horne* undermines plaintiffs' position. The government did not physically seize bump stocks, it chose to instead regulate their possession.

Indeed, the district court in the District of Maryland rejected an argument similar to plaintiffs' in a case involving a takings challenge to Maryland's ban on possessing bump stocks.

The court there rejected the argument that "states cannot completely ban any item of personal property, no matter how dangerous, and no matter how compelling the state's interest in doing so, without compensating all individuals in the state who happen to already own it." *Maryland Shall Issue v. Hogan*, 353 F. Supp. 3d 400, 411 (D. Md. 2018).  The Court explained that "[t]his theory would entail a radical curtailment of traditional state police powers, one that flies in the face of a long history of government prohibitions of hazardous contraband." *Id.* at 408-09.  In addressing *Maryland Shall Issue*, plaintiffs contend that it is "questionable whether the analysis of a state's police powers is applicable to federal exercise of police powers," but they make no argument against their application here.  Plaintiffs have also never challenged the authority of the federal government to ban machine guns.  Instead, they ask the Court to consider *Duncan et al. v. Becerra*, 366 F. Supp. 3d 1131, 1184 (S.D. Cal. 2019).  Pl. Opp. 21.  But, *Duncan* did not involve a ban on the possession of bump stocks.  Instead, the case involved a challenge to a state law banning the possession of large capacity magazines, and the primary focus of the court's decision was a holding that the statute should be enjoined because it violated the Second Amendment, a distinction that does not exist in this case.  *See Duncan*, 366 F. Supp. 3d at 1142, 1183-84.

Plaintiffs caution that if "the state can freely take private property merely by asserting a prevailing notion of what poses a public safety concern, firearms will not be the only category of private property at risk of government usurpation." Pl.  Opp. 23.  But the purpose of the decades-old doctrine embraced by the Supreme Court and the Federal Circuit upon which we rely is that the government may regulate personal property to protect the health and welfare without being put to the choice of regulate and pay compensation, or leave the property unregulated. Congress determined long ago that machine guns are dangerous weapons to the

public and law enforcement – Congress forbade those guns for that reason; and the Final Rule merely explained that bump stocks fall within that prohibition. The Takings Clause has always been interpreted to mean that some property rights must yield to government action necessary to protect the public from danger.

## IV. <u>Whether The Final Rule Is Legislative Or Interpretive Is Not Material</u>

Plaintiffs devote a significant portion of their brief to discussing *Guedes et al. v. ATF et al.,* 920 F.3d 1 (D.C. Cir. 2019) (*per curiam*), which held that the Final Rule was a legislative rather than interpretive rule. Pl. Opp. 13-16. They fail to show, however, how the classification of the Final Rule as legislative or interpretive has any bearing on the takings analysis.

The Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq.*, distinguishes between legislative rules and interpretive rules because, as a general matter, legislative rules receive deference under the Supreme Court's decision in *Chevron, U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984), while interpretive rules do not. *See, e.g., Chrysler Corp v. Brown*, 441 U.S. 281, 301-02, (1979). In *Guedes*, the D.C. Circuit rejected an attempt to enjoin the Final Rule, finding that it was a legislative rule, entitled to *Chevron* deference. 920 F.3d at 18-20.

Regardless of whether it was legal to own a bump stock before the Final Rule, the proper focus of the Court's inquiry is on the action taken by the Government and its connection to the police power – explaining that bump stocks fall within the criminal statutory prohibition on machine guns.[6] Plaintiffs seek to cloud this analysis by emphasizing the Final Rule's effective date, noting that as of the date they destroyed their bump stocks it was not unlawful to possess

---

[6] We never argued that a pre-existing statutory prohibition must be in place to prevent the Court from finding a taking here.

the devices, as it purportedly would be days later.  Pl. Opp. 13-15.  Plaintiffs' timing distinction lacks legal significance.  Irrespective of whether an individual possessing a bump stock could be criminally prosecuted during the time between the Final Rule and the effective date, the Final Rule indisputably announced the government's position that bump stocks fall within the statutory prohibition against machine guns.  Under federal firearms law, possession of the devices was illegal.  Final Rule at 66,514-66,515.  Viewed either as a legislative or interpretive rule, the government was acting under its statutory authority to prevent the possession of dangerous weapons under federal criminal law, a connection to the police power more than sufficient to preclude a taking here.  *See id*. at 66,518-66,519.

Accordingly, plaintiffs' attempt to re-characterize this Court's decision in *Akins* as relying upon the distinction between a legislative and interpretive rule is similarly misguided.  Pl. Opp. 15.  There is nothing in the *Akins* decision that even hints at the fact that the distinction had legal significance for the Court.  Finally, plaintiffs' assertion that *Akins* is not applicable because the Final Rule was a product of politics, Pl. Opp. 16, is irrelevant.  This argument is nothing more than a back-door APA challenge that this Court cannot entertain.  *See Rith Energy, Inc. v. United States*, 247 F.3d 1355, 1366 (Fed. Cir. 2001) (plaintiffs are required to litigate a takings claim on the assumption that the "action was both authorized and lawful"); *Del-Rio Drilling Programs Inc. v. United States*, 146 F.3d 1358, 1362 (Fed. Cir. 1998).

## CONCLUSION

For these reasons, we respectfully request that the Court dismiss the amended complaint for failure to state a claim upon which relief may be granted.

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

s/L. Misha Preheim
L. MISHA PREHEIM
Assistant Director

s/Nathanael B. Yale
NATHANAEL B. YALE
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, DC 20044
Telephone: (202) 616-0464
Facsimile:  (202) 353-0461

*Attorneys for Defendant*

OF COUNSEL:
MELISSA ANDERSON
Associate Chief Counsel
Litigation
Bureau of Alcohol, Tobacco,
    Firearms and Explosives

July 22, 2019

20