# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

THE MODERN SPORTSMAN, LLC, et al.,

   Plaintiffs,

and

SLIDE FIRE SOLUTIONS, LP, et al.,

   Intervenors,

v.

THE UNITED STATES,

   Defendant.

CASE NO.: 19-449
HON. LOREN A. SMITH

---

## INTERVENORS SLIDE FIRE SOLUTIONS, LP AND JEREMIAH COTTLE'S COMPLAINT

---

Intervenors Slide Fire Solutions, LP and Jeremiah Cottle, in his individual capacity, bring this action seeking just compensation under the Fifth Amendment to the United States Constitution for the taking of their property, including 85,000+ physical bump stocks and associated intellectual property.

## NATURE OF CLAIM

1.      Intervenors are the inventors, patent holders, and only lawful manufacturers of bump stocks in the United States. Intervenors bring this action seeking just compensation for the taking of their property by the United States government.

2.      Effective March 26, 2019, the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) reclassified bump stocks as "machineguns" under the Gun Control Act of 1968 (GCA) and the National Firearms Act of 1934 (NFA), mandating that all owners of bump stocks either surrender or destroy their property without compensation. This reclassification resulted in a complete ban of bump stocks across the United States.

3.      Following this ban, Intervenors were compelled to destroy 73,000 bump stocks held under a consignment agreement with RW Arms, Ltd., as well as an additional 12,000 units retained at their Moran, Texas manufacturing facility. The ban also rendered Intervenors' intellectual property interests tied to the production and licensing of bump stocks effectively unusable, significantly diminishing their value and

preventing the exclusive use of its patents between 2019 and 2024, a quarter of the patents' limited 20-year terms.

4.    On June 14, 2024, the United States Supreme Court, in *Garland v. Cargill*, ruled that the ATF's reclassification of bump stocks as machineguns exceeded its authority and was therefore improper, overturning the ban. As a result, the taking of Plaintiffs' property by the government was without legal basis and compensation is due to Plaintiffs for the value of the destroyed property.

5.    Intervenors now seek just compensation for the government's seizure and destruction of their physical property, as well as damages for the harm done to their intellectual property and loss of use.

## JURISDICTION AND VENUE

6.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1491(a)(1), which gives the United States Court of Federal Claims jurisdiction over any claim against the United States founded upon the Constitution, an Act of Congress, or any regulation of an executive department, for liquidated or unliquidated damages in cases not sounding in tort.

7.    Venue is proper in this Court as the claim arises under the Fifth Amendment's Takings Clause, and the United States government is the proper defendant in such claims.

## PARTIES

8.    Plaintiffs **The Modern Sportsman, LLC; RW Arms, Ltd.; Mark Maxwell; and Michael Stewart** initiated this lawsuit on March 26, 2019. Intervenors file their claim in intervention and provide notice pursuant to Federal Rule of Civil Procedure 24. Intervenors have the proper interest in the property that is the subject of the Plaintiffs' lawsuit, specifically, bump stocks that RW Arms claims to have a "property interest" and "legally purchased and owned." As stated, title ownership never transferred from Intervenors to RW Arms.

9.    As the sole patent holders and manufacturers of bump stocks in control of the entire U.S. bump stock market in 2019 and preceding years, Intervenors are unsure how The Modern Sportsman came into possession of nearly 1,500 bump stocks, as alleged, and whether true ownership interest exists. At the time of this filing, Intervenors do not have information regarding the source of the bump stocks referenced and claimed by the plaintiff.

10.    Intervenor **Slide Fire Solutions, LP** is a Texas-based limited partnership and was the only lawful manufacturer[1] of bump stocks in the United States at the time of the 2019 ban. Slide Fire Solutions retained title to all bump stocks held under consignment by RW Arms that were confiscated and destroyed in compliance with the ATF's ban. It was also the owner of owner of bump stocks that were destroyed at its Moran, Texas manufacturing facility.

11.    Intervenor **Jeremiah Cottle**, currently a Tennessee resident, is the inventor and patent holder of the bump stock and the CEO of Slide Fire Solutions. Cottle holds intellectual property rights, including patents, copyrights, and trademarks relating to the bump stock technology.

12.    Defendant **United States**, through its agent, the ATF, implemented the 2019 Final Rule mandating the surrender or destruction of bump stocks under the threat of criminal prosecution. The Final Rule was subsequently invalidated by the Supreme Court in 2024.

---

[1] Fostech, Inc., an Indiana manufactured and retailer, was permitted to manufacture aluminum bump stocks prior to the ban under a licensing agreement with Intervenors.

## FACTUAL BACKGROUND

13.    Intervenors    are    the    inventors,    patent    holders,    and manufacturers of bump stocks, which were legally marketed and sold in the  United  States  until  2019.  Bump  stocks  are gun  stocks that  are specially  designed  to  make  bump  firing  easier,  but  do  not  make the firearm automatic.  Essentially,  bump  stocks  assist rapid  fire  by "bumping"  the  trigger  against one's  finger  (as  opposed  to  one's  finger pulling on the trigger), thus allowing the firearm's recoil, plus constant forward pressure by the non-shooting arm, to actuate the trigger. Bump fire stocks can be placed on numerous platforms but are most commonly affixed  to  firearms  within  the  AR  or  AK families.  By  the  end  of  2018, bump stocks in the United States were retailing for more than $350, with prices  increasing  prior  to  enactment  of  federal  regulation  from  $500  to $1,200 a piece.

14.    These modern, non-mechanical bump stocks were invented by Slide Fire Solutions founder Jeremiah Cottle. Such bump stocks have no internal spring and require the shooter to use their support hand to maintain constant forward pressure on the front of the rifle to achieve continuous fire.

15.    Between 2008 and 2017, the ATF issued ten letter rulings that classified bump stocks as a "firearm part", which are unregulated. In June 2010, for example, the ATF responded to a request by Slide Fire Solutions to evaluate its bump stock. In a letter, John Spencer, then the ATF's Firearms Technology Industry Services Branch chief, wrote that the device examined had no "functioning mechanical parts or springs" that made it perform like an automatic weapon. As such, Spencer further wrote, the bump stock is not regulated as a firearm. In fact, as recently as April 2017, Michael Curtis, the head of ATF's Firearms Technology Branch, confirmed that a device without an automatic firing cycle is not a "machinegun" and subject to regulation.

16.    However, in March 2018, because of the alleged use of bump stocks in the 2017 Las Vegas shooting, at the request of President Donald J. Trump through executive order, the U.S. Department of Justice announced a plan to reclassify bump stocks as "machineguns" under existing federal law, effectively banning them nationwide. President Trump also issued an online statement that the DOJ would "issue the rule banning BUMP STOCKS with a mandated comment period." Slide Fire Solutions took steps to winddown its operations including, but not

limited to, entering a consignment agreement with RW Arms. On April 17, 2018, the company issued an announcement: "On Sunday, May 20, 2018 at midnight CST, Slide Fire will cease taking orders for its products and shut down its website."

17.    Once Intervenors fulfilled all orders placed prior to its May 20 closure, the company began to implement its winddown process and strategy, which included finding space to store its manufactured but unsold bump stocks. Slide Fire employees, Mark Maxwell and Michael Stewart, desired to start their own firearm retail business, but could only do so with the help of Cottle and Slide Fire Solutions.

18.    Maxwell and Stewart started RW Arms and leased warehouse space in Fort Worth. Intervenors allowed RW Arms to market and sell Slide Fire's bump stocks on its website until the ban was officially put in place. It was agreed that during this temporary arrangement, all revenues would be split. Maxwell and Stewart did not have the funds to buy the bump stocks outright, and never offered to purchase the bump stocks.

19.    In May 2018, as part of its winddown, Intervenors then transported thousands of its bump stocks to the Fort Worth facility and

RW Arms was permitted to market and sell Slide Fire bump stocks until the ban was formally implemented or the inventory was depleted. RW Arms was able to sell some of the bump stocks and made a few payments to Slide Fire Solutions over the course of 2018. Intervenors retained title to all bump stocks held under the consignment agreement with RW Arms. This includes bump stocks that –unbeknownst to Intervenors– RW Arms kept over the course of the ban and sold in 2024.

20.    On December 26, 2018, the ATF indeed issued a final rule reclassifying bump stocks as "machineguns" under the National Firearms Act (NFA) and the Gun Control Act (GCA) banning their sale and possession. The ATF's final rule required that all bump stocks be destroyed or surrendered within 90 days, by March 26, 2019, under the threat of criminal prosecution. This was an abrupt reversal of clear ATF guidance that was followed by Intervenors and hundreds of thousands of law-abiding citizens and retailers who legally purchased bump stocks as an accessory over more than an eight-year period.

21.    This reclassification resulted in a complete ban of bump stocks across the United States calling for bump stocks to be surrendered to the ATF or destroyed in a prescribed manner. Intervenors took steps

to destroy inventory at its manufacturing facility in Moran, Texas and destroyed approximately 12,000 bump stocks to comply with the ATF's ban.

22.    On March 26, 2019, the last day for compliance with the ban, Slide Fire and Cottle took steps to destroy its largest stockpile of remaining inventory at RW Arms' storage facility in Fort Worth. This ended any arrangement between Slide Fire and RW Arms. At the time, RW Arms had physical possession of over 73,000 unsold bump stocks. The ATF came to the storage facility and Jeremiah Cottle traveled to Fort Worth to personally surrender the Intervenors' remaining, unsold bump stock inventory. The ATF oversaw the destruction of Intervenors' bump stocks. It took several hours to complete the destruction. Intervenors did not receive *any* compensation for the bump stocks destroyed.

23.    RW Arms never "legally purchased" the bump stocks outright from Slide Fire Solutions and, therefore, held no ownership interest in the later confiscated and destroyed property. The parties did not contemplate a purchase of the bump stocks because it was a complete impossibility. RW Arms was a startup with no meaningful ability to purchase the bump stocks. Intervenors always retained title to the bump

stocks. The consignment agreement was in place on the final day for compliance with the ban. RW Arms has no legitimate legal basis for claiming title in the bump stocks at issue.

24.    Intervenors were the sole patent owners and lawful manufacturers of bump stocks in the United States. As the exclusive developers and patent holders of this technology, Intervenors controlled the entire production and distribution of bump stocks across the country. All manufacturing and sales of bump stocks originated from Intervenors, meaning that every bump stock available in the market was derived from their patented technology. No other entity, including retailers such as RW Arms, had independent rights to manufacture or patent bump stocks. The entire bump stock industry flowed through Slide Fire Solutions as the lawful source of the product, and all sales or consignment arrangements were contingent on Intervenors' agreement and intellectual property rights. As a result of the ban, *all* existing supplies became subject to confiscation and/or destruction without compensation. There is no value in the scrap from a destroyed bump stock.

25.    On June 14, 2024, the 2018 final rule by the ATF was vacated by the U.S. Supreme Court in *Garland v. Cargill*. In that decision, the

Court ruled that the ATF's reclassification of bump stocks as machineguns was improper and outside its statutory authority. Specifically, Associate Justice Clarence Thomas, writing for the six-member majority, stated the 2018 final rule exceeded the ATF's statutory authority under the National Firearms Act of 1934 as a bump stock does not satisfy the Act's definition of machine gun.

26.     Despite Slide Fire's good-faith compliance with the Final Rule, including the destruction of its remaining stockpile and intellectual property impairment, the Supreme Court's decision in *Cargill* revealed that the ATF's actions exceeded its legal authority, entitling Intervenors to just compensation under the Fifth Amendment. Intervenors can now resume its operations, and they have, but they have not been compensated by the government for its taking under the guise of the ATF's ban.

27.     As a result of the ATF's ban and requisite destruction of bump stocks owned by Intervenors, they have suffered significant financial harm, including the destruction of valuable physical property and the devaluation of their intellectual property, including patents, copyrights, and trademarks. Bump stocks were legal when Intervenors

manufactured the bump stocks at issue, and remained legal at all times until the government demanded their surrender or destruction under the ATF's bump stock ban.

28.    According to the ATF's final rule, the economic impact of the bump stock reclassification was estimated to exceed $100 million within the first year of enforcement. This estimation reflects the significant scope of the bump stock industry, of which Intervenors were the sole patent holders and lawful manufacturers. By the ATF's own admission, the financial consequences of the ban on manufacturers, retailers, and consumers were substantial. As the exclusive source of bump stocks in the United States, Intervenors' damages can be directly calculated based on the ATF's projection of the industry's total impact. Intervenors' financial losses, including the confiscation of stock, loss of revenue, and devaluation of intellectual property, are therefore aligned with the ATF's assessment of the broader economic harm caused by the rule.

29.    Slide Fire invested significant financial and operational resources into developing, manufacturing, and distributing its products. These investments were made in reliance on over a decade of clear and

consistent guidance from the ATF, which had repeatedly classified bump stocks as unregulated firearm accessories.

30.    From 2010 to 2018, Slide Fire built a robust supply chain and manufacturing infrastructure to meet growing consumer demand for bump stocks. This included substantial expenditures on tooling, assembly lines, employee training, warehousing, distribution channels, and marketing. Slide Fire relied on ATF rulings confirming that bump stocks were not machineguns and were not subject to regulation. These rulings formed the foundation of Slide Fire's business model, giving the company—and its investors—confidence to expand operations and increase production.

31.    Slide Fire's reliance on ATF guidance extended to its compliance practices, including obtaining specific determinations from the ATF regarding the legality of its products. ATF letters were included in all shipments to customers.

32.    The ATF's 2018 reversal—announced abruptly and implemented through the 2019 final rule—effectively destroyed Slide Fire's business. The reclassification of bump stocks as machineguns under the GCA and NFA instantly rendered Slide Fire's entire inventory

unsellable, including approximately 85,000 units that were either consigned to RW Arms or held at Slide Fire's manufacturing facility in Moran, Texas. Slide Fire, a company that had adhered to every legal requirement under the ATF's own guidance, was forced to halt operations, lay off employees, and dismantle its supply chain.

33.    The financial impact of the ATF's final rule was catastrophic for Slide Fire. The company suffered direct losses from the destruction of over 85,000 bump stocks, which represented millions of dollars in inventory value. In addition to the physical destruction of its products, Slide Fire and Cottle faced intangible losses from the devaluation of its intellectual property, including patents and trademarks that had previously underpinned its market dominance. The ATF's sudden reversal and the resulting ban effectively eliminated any economic value associated with Slide Fire's innovations, as the ban made it impossible to license or commercialize its intellectual property.

34.    Slide Fire's investments and reliance on ATF guidance underscore the unfairness of the government's actions. The ATF's abrupt policy change disregarded Slide Fire's reasonable, investment-backed expectations, depriving the company of any opportunity to adapt its

business or seek alternative uses for its products. Unlike other regulatory changes that might provide transitional periods or compensation mechanisms, the ATF's final rule offered no such protections. Instead, Slide Fire was forced to destroy its inventory and intellectual property without compensation, resulting in devastating financial consequences.

## COUNT I: FIFTH AMENDMENT TAKING CLAIM

35. Intervenors re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

36. The ATF's 2019 Final Rule mandated the destruction or surrender of all bump stocks, effectuating a physical taking of Intervenors' tangible property. Additionally, the government's actions impaired Intervenors' exclusive intellectual property rights, including patents and trademarks, effectively eliminating their economic value during the ban's enforcement period.

37. The Fifth Amendment to the United States Constitution provides that private property shall not "be taken for public use, without just compensation." The ATF's seizure of the bump stocks through the 2019 final rule constitutes a physical taking of Intervenors' personal property without just compensation. Intervenors were deprived of all

economically viable use of their property because of the ATF's action, which was carried out under color of federal law.

38.    Intervenors are entitled to just compensation for the taking of their physical property under the Fifth Amendment. Specifically, the forced destruction of over 85,000 bump stocks with a fair market value of $350 to $1,200 per unit.

\*    \*    \*

39.    Intervenors also hold intellectual property rights in the form of patents, copyrights, and trademarks related to the design, production, and sale of bump stocks. These include:

| Registered Copyrights | |
| --- | --- |
| Register Number | TX0007419175 |
| Granted Patents | |
| Patent Number | D700943 |
| Patent Number | D701281 |
| Patent Number | D710477 |
| Patent Number | D710478 |
| Patent Number | 8127658 |
| Patent Number | 8176835 |
| Patent Number | 8356542 |
| Patent Number | 8448562 |
| Patent Number | 9546836 |
| Patent Number | 9612083 |
| Registered Trademarks | |
| Register Number | 4289886 |

40.     The ATF's confiscation of bump stocks directly affected the marketability and economic value of these intellectual property rights. The value of the patents, trademarks, and copyrights has been substantially diminished because of the ATF's rule.

41.     Intervenors have invested significant resources in developing, patenting, and marketing bump stocks. The confiscation of the physical products, coupled with the cessation of their production and sale, has resulted in a loss of revenue and an infringement on Intervenors' intellectual property rights.

42.     Intervenors are entitled to compensation not only for the physical seizure of their bump stocks but also for the depreciation and devaluation of their intellectual property, which was rendered effectively useless by the government's actions.

\*     \*     \*

43.     The ATF required Intervenors, in this case, to destroy their bump stocks. The ATF's actions are attributable to the United States. The United States government has not provided Intervenors with just compensation for the taking of their property or improper deprivation of their intellectual property.

---

44.    Intervenors' intellectual property, including patents, trademarks, and copyrights, was rendered economically valueless during the ban's enforcement period due to the ATF's regulatory actions. Although the government did not seize these intellectual property rights outright, its actions effectively deprived Intervenors of their ability to use, license, or derive economic benefit from these assets. Similar to the reasoning in Ruckelshaus v. Monsanto Co., where the Supreme Court recognized that government interference with trade secrets could constitute a taking, the ATF's actions here interfered with Intervenors' reasonable investment-backed expectations regarding the use and value of their intellectual property.

45.    By mandating the destruction of all physical bump stocks and effectively prohibiting their manufacture and sale, the government extinguished the market for these patented technologies, thereby nullifying their value. Intervenors are entitled to just compensation for this regulatory taking of their intellectual property, which was rendered economically useless during the enforcement period and beyond.

*    *    *

46.    The Tucker Act, 28 U.S.C. § 1491(a)(1), provides Intervenors with a remedy for the physical and regulatory takings alleged herein. By mandating the destruction of Intervenors' bump stocks and interfering with their intellectual property rights, the government effected a taking for which just compensation is owed. The Tucker Act authorizes this Court to award monetary damages for such takings, ensuring that Intervenors are made whole for the losses they have incurred.

## COUNT II: ILLEGAL EXTRACTION

47.    Intervenors re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

48.    In the alternative, the final rule constitutes an illegal exaction because the ATF exceeded and contravened its statutory and regulatory authority granted by Congress under the GCA and NFA. The ATF asserted that it was exercising the regulatory power conferred by 18 U.S.C. 922(o)(1) to prohibit citizens from possessing machineguns when it redefined the term "machinegun" to include bump stocks and ordered Intervenors to surrender or destroy their bump stocks.

49.    By requiring Intervenors to bear the costs and consequences of compliance with an invalid regulation, the ATF enriched the

government at Intervenors' expense, imposing financial and operational burdens that the law did not permit.

50.    The U.S. Supreme Court in *Garland v. Cargill* has held that bump-stocks are not "machineguns" as the Congress defined that term in the statute and that the ATF therefore exceeded its statutory authority by issuing the final rule and requiring the surrender and destruction of Intervenor's property.

51.    By and through and a direct result of the ATF's illegal action or improper application of the law, the government has thus extracted Intervenor's private property and property interests.

52.    The final rule has enriched the government at Intervenor's expense, directly or in effect, by illegally imposing costs and expenses on Intervenors that they should not have to bear, and that the government otherwise would bear, including without limitation the cost of the bump stocks that were destroyed and the cost to destroy.

53.    The ATF's actions have had a direct and substantial impact on Intervenors and the exaction occurred as direct result of the government taking and/or extraction.

54.    Intervenors are entitled to recovery not only for the physical seizure of their bump stocks and the fair market value of the stocks, but also for the depreciation and devaluation of their intellectual property, which was rendered effectively useless by the government's actions.

## PRAYER

55.    WHEREFORE, Intervenors Slide Fire Solutions, LP and Jeremiah Cottle pray for relief as follows:

- An order clarifying ownership of the bump stocks claimed by RW Arms, confirming Intervenors' rightful entitlement to any compensation awarded in this case;

- A declaration that the ATF's actions constituted a taking under the Fifth Amendment, entitling Intervenors to just compensation;

- Alternatively, a judgment declaring that the government unlawfully extracted Intervenors' property without just compensation;

- A judgment awarding Intervenors just compensation for the full value of the destroyed bump stocks;

- A judgment awarding compensation for the impairment and devaluation of Intervenors' intellectual property portfolio, including patents, copyrights, and trademarks;

- Prejudgment and post judgment interest on any compensation awarded, calculated from the date of the taking to the date of payment;

▪ Attorneys' fees and costs incurred in prosecuting this action; and

▪ Such other and further relief as this Court deems just and proper.

April 18, 2025                Respectfully submitted:

**Riddle PLLC**

By:  /s/

**Scott Riddle** (attorney-in-charge)
scott@riddlepllc.com
**Bradford Smith** (of counsel)
brad.smith@utexas.edu
3303 Lee Parkway, Suite 360
Dallas, TX 75219
Telephone: (214) 903-0778
Facsimile:  (972) 408-1662

**ATTORNEYS FOR INTERVENORS
SLIDE FIRE SOLUTIONS, LP AND
JEREMIAH COTTLE**

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was forwarded to all counsel of record on this the April 18, 2025, via ECF and/or email.

/s/ Scott Riddle
Scott Riddle