# In the United States Court of Federal Claims

Nos. 19-449; 25-425 (consolidated)
Filed: June 5, 2026

|  |  |
|---|---|
| THE MODERN SPORTSMAN, LLC, et al., | ) ) ) |
| Plaintiffs, | ) ) ) |
| and | ) ) |
| SLIDE FIRE SOLUTIONS, LP, et al., | ) ) |
| Plaintiff-Intervenors, | ) ) |
| v. | ) ) |
| THE UNITED STATES, | ) ) |
| Defendant. | ) ) |
| SLIDE FIRE SOLUTIONS, LP, et al., | ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| THE UNITED STATES, | ) ) |
| Defendant. | ) ) ) |

*Adam Michael Riley*, Flint Law Firm, Edwardsville, Illinois, for plaintiff The Modern Sportsman, LLC.

*Mark Fernlund Hearne, II*, True North Law LLC, St. Louis, Missouri, for plaintiffs RW Arms, Ltd., Mark Maxwell, and Michael Stewart.

*Scott Ryan Riddle*, Riddle PLLC, Dallas, Texas, for plaintiff-intervenors Slide Fire Solutions, LP and Jeremiah Cottle.

*Nathanael Brown Yale*, United States Department of Justice, Civil Division, Washington, D.C., for defendant.

**OPINION AND ORDER**

*SMITH*, Senior Judge

This case arises from a 2018 federal rule ("the Rule") requiring the destruction or surrender of bump-stock devices ("bump stocks") within ninety days of the publication of the rule. Plaintiffs Slide Fire Solutions, LP, and Mr. Jeremiah Cottle (collectively, "Slide Fire" or "Slide Fire plaintiffs")—who are intervenors in the lead case, No. 19-449, and plaintiffs in the member case, No. 25-425—allege that the rule caused them to destroy more than 85,000 bump stocks in which they claim ownership, and further rendered their intellectual property rights related to bump stocks "effectively useless." They allege that the federal government has affected: (1) either a taking of the bump stocks or an illegal exaction of their value; (2) an illegal exaction of the cost to destroy the bump stocks; and (3) a regulatory taking of the intellectual property.

The government moves to dismiss the complaint in full for failure to state a claim upon which relief can be granted. The Court concludes as follows. First, Slide Fire has stated a claim for a taking of bump stocks, but not for an illegal exaction of their value. Second, Slide Fire has stated a claim for an illegal exaction of the cost to destroy the bump stocks. Third, Slide Fire has stated a claim for a regulatory taking of its intellectual property. Accordingly, the government's motion is **GRANTED IN PART** and **DENIED IN PART**.

## I.    Background and Procedural History

### A.    Prior Proceedings

The Court recounted the legal background and procedural history of this case in a recent ruling on the government's motion to dismiss the claims of the lead plaintiffs—RW Arms, Ltd., Mark Maxwell, and Michael Stewart (collectively, "RW Arms") and The Modern Sportsman, LLC ("Modern Sportsman"). The relevant excerpts of that ruling are reproduced below:

> The National Firearms Act of 1934 ("NFA"), as amended, makes it a criminal offence "for any person to transfer or possess a machinegun" not lawfully obtained prior to May 19, 1986. 18 U.S.C. § 922(o). A "machinegun" is defined as "any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger." 26 U.S.C. § 5845(b). The term "also include[s] . . . any part designed and intended . . . for use in converting a weapon into a machinegun." *Id.*
>
> [These consolidated] case[s] relate[] to the federal government's attempt— following a 2017 mass shooting in which the perpetrator used bump stocks to kill fifty-eight people and wound an additional five hundred—to ban bump stocks by classifying them as machineguns. In 2018, the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") promulgated a final rule ("the Rule") "clarify[ing]" that bump stocks are machineguns, as that term is defined in § 5845(b). *Bump-Stock-Type Devices*, 83 Fed. Reg. 66,514, 66,514 (Dec. 26, 2018). ATF also gave "current possessors" of bump stocks ninety days to either "undertake

2

destruction of the devices" or "abandon [the] devices at the nearest ATF office" for destruction. *Id.* at 66,549.

[RW Arms and Modern Sportsman] complied with the Rule by destroying their bump stocks, and soon after, on March 26, 2019, sued in this Court for just compensation under the Takings Clause of the Fifth Amendment. . . .  The Court dismissed under the police power doctrine, which holds that governments are understood to "condemn contraband or noxious goods" under their police power, not their eminent domain power, and therefore do not need to pay just compensation. *The Modern Sportsman, LLC v. United States*, 145 Fed. Cl. 575, 576 (2019) (quoting *AmeriSource Corp. v. United States*, 525 F.3d 1149, 1153 (Fed. Cir. 2008)).  The Federal Circuit affirmed on different grounds, holding that plaintiffs did not have a "property interest" in being free from "an authorized and legally valid interpretation of the statutory prohibition" against machineguns. *McCutchen v. United States*, 14 F.4th 1355, 1366 (Fed. Cir. 2021) (incorporated by reference in *The Modern Sportsman, LLC v. United States*, No. 20-1107, 2021 WL 4486419, at *1 (Fed. Cir. Oct. 1, 2021)).  The Supreme Court denied certiorari, 143 S. Ct. 422 (2022), and that was that.

Except it was not.  While [this] case was winding its way through the courts, other bump stock owners challenged the legality of the Rule under the Administrative Procedure Act ("APA").  Following a drawn-out battle, in *Garland v. Cargill*, the Supreme Court held that bump stocks are not machineguns and struck down the Rule.  602 U.S. 406, 415 (2024).

[RW Arms and Modern Sportsman] then asked the Court to revive this lawsuit, which the Court did, on September 19, 2024. . . .  The next day, [they] amended their pleadings to add an illegal exaction claim in addition to their taking claim.

*Modern Sportsman v. United States* ("*Modern Sportsman III*"), 176 Fed. Cl. 567, 569–70 (2025).

On May 8, 2025, the Court dismissed the lead plaintiffs' claim for the illegal exaction of bump stocks while allowing their takings claim to proceed.  *Id.* at 569; Order of June 16, 2025, ECF No. 78.

## B.    Slide Fire

### 1.    Facts

Accepting as true Slide Fire's self-description in its pleadings, the facts are as follows.  Mr. Jeremiah Cottle, one of the Slide Fire plaintiffs and the CEO of Slide Fire Solutions, LP, is the inventor of "modern, non-mechanical bump stocks."  *See* Intervenors Slide Fire Solutions, LP and Jeremiah Cottle's Complaint ¶ 14, ECF No. 62 [hereinafter Int. Compl.]; *see also id.* at ¶ 39 (listing patents and associated intellectual property).  Between 2010 and 2018, Slide Fire was the "sole patent holder[] and manufacturer[] of bump stocks in control of the entire U.S. bump stock market."  *Id.* at ¶ 9; Decl. of Jeremiah Cottle 4, ECF No. 38-1 [hereinafter "Cottle Decl."].  After

the President issued a memorandum directing the Attorney General to initiate notice-and-comment rulemaking to reclassify bump stocks as machineguns, *see Application of the Definition of Machinegun to "Bump Fire" Stocks and Other Similar Devices*, 83 Fed. Reg. 7,949 (Feb. 20, 2018), Slide Fire decided to "winddown its operations."  Int. Compl. at ¶ 16.  On May 20, 2018, it "cease[d] taking orders for its products and shut down its website." *Id.*  As part of its plan to cease operations, Slide Fire permitted RW Arms to transport large quantities of "manufactured but unsold" bump stocks from a manufacturing facility in Moran, Texas, to a storage facility in Fort Worth, Texas, for the purpose of selling the items (with revenue split between Slide Fire and RW Arms) until the bump stocks ban went into effect on March 26, 2019. *Id.* at ¶ 17.

On March 26, 2019, RW Arms still had 73,000 bump stocks in its possession, title to which remained in Slide Fire. *Id.* at ¶ 22. *See also The Modern Sportsman v. United States* ("*Modern Sportsman IV*"), 180 Fed. Cl. 640 (2026), ECF No. 105.  To comply with the Rule, Mr. Cottle traveled to the Fort Worth facility and had the bump stocks destroyed, with the ATF observing. *Id.*; Cottle Decl. 13–14.

Slide Fire also had in its possession 12,000 bump stocks at the Moran facility.  Int. Compl. at ¶ 21.  Sometime after the Rule was issued but before March 26, 2019, Slide Fire "took steps to destroy" these bump stocks. *Id.*

The Court understands that Slide Fire resumed operations sometime after the Rule was vacated following the Supreme Court's decision in *Garland v. Cargill*.  *See* Slide Fire, https://www.bumpstock.com (last accessed June 5, 2026) (Slide Fire's retail website).

### 2.    *Procedural History*

On December 3, 2024, Slide Fire filed a motion to intervene under Rules the of the United States Court of Federal Claims ("RCFC") 24.  *See* Mot. Intervene, ECF No. 38.  Slide Fire claimed ownership of following property interests affected by the Rule: approximately 73,000 bump stocks claimed by RW Arms; an additional 12,000 bump stocks whose ownership is not in dispute; and intellectual property relating to bump stock technology. *Id.* at 3, 5.  On March 23, 2026, the Court found the bump stocks claimed by RW Arms were held on consignment and title remained with Slide Fire. *Modern Sportsman IV*, 180 Fed. Cl. at 647.

On March 5, 2025—while briefing on the motion to intervene was still ongoing—Slide Fire filed a separate suit claiming compensation for the taking or illegal exaction of the same property interests. *See* Compl., ECF No. 1, No. 25-425.  On April 11, 2025, the Court consolidated the cases and granted Slide Fire's motion to intervene in the lead case, No. 19-449. *See* Order Granting Mot. Intervene, ECF No. 56; Order Consol. Cases, ECF No. 58.

The Slide Fire plaintiffs are thus intervenors in the lead case and the principal plaintiffs in the member case.  As such they have filed two nearly identical complaints. *See* Int. Compl., ECF No. 62, No. 19-449; Compl., ECF No. 1, No. 25-425.  For ease of exposition, this opinion will refer to them simply as "the complaint" and cite only to the complaint in the lead case.

In its complaint, Slide Fire alleges that the government either took or illegally exacted "85,000+" of its bump stocks because they were destroyed pursuant to the Rule. Int. Compl. ¶¶ 35–54. These allegations are substantively identical to those made by the lead plaintiffs. *See Modern Sportsman III*, 176 Fed. Cl. at 570. Unlike the lead plaintiffs, however, Slide Fire makes two additional allegations. First, the Rule illegally exacted the cost incurred by Slide Fire to destroy the bump stocks. Int. Compl. ¶¶ 52–53. Second, the Rule effected a regulatory taking of intellectual property—ten patents, one copyright, and one trademark—by rendering them "effectively useless." *Id.* at ¶¶ 39–42.

On May 9, 2025, the government filed a motion to dismiss Slide Fire's complaint in full for failure to state a claim under RCFC 12(b)(6). *See* Mot. Dismiss, ECF No. 72. Slide Fire responded on June 13, 2025, and the government replied on July 18, 2025. *See* Slide Fire Resp., ECF No. 77 [hereinafter Resp.]; Def. Reply, ECF No. 82 [hereinafter Reply]. On August 19, 2025, the Court heard oral argument, with discussion limited to Slide Fire's claim for a taking of its intellectual property. On September 8, 2025, Slide Fire filed a supplemental brief addressing whether the alleged harm to its intellectual property rights are non-cognizable "consequential damages" or "collateral harm." *See* Slide Fire Supp. Br., ECF No. 90. On November 25, 2025, the government filed its supplemental response. *See* Def. Supp. Resp., ECF No. 103.

## II.    Legal Standard

To survive a motion to dismiss for failure to state a claim upon which relief can be granted, a complaint must allege facts that, if taken as true, "plausibly suggest[] . . . a showing of entitlement to relief." *Kam-Almaz v. United States*, 682 F.3d 1364, 1367 (Fed. Cir. 2012) (citations omitted). A court need not "accept as true a legal conclusion couched as a factual allegation." *Id.* at 1368 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

## III.    Discussion

The Tucker Act, 28 U.S.C. § 1491(a)(1), confers jurisdiction upon this Court to hear both just compensation claims under the Takings Clause, and illegal exaction claims under the Due Process Clause. *See Boeing Co. v. United States*, 968 F.3d 1371, 1384 (Fed. Cir. 2020); *Murray v. United States*, 817 F.2d 1580, 1583 (Fed. Cir. 1987). This opinion first discusses the claim for a physical taking of the bump stocks; then the claim for illegal exaction of the bump stocks; then the claim for illegal exaction of the cost of destroying the bump stocks; and finally, the claim for regulatory taking of intellectual property.

### A.    Physical Taking of Bump Stocks

Slide Fire alleges that the government effected a physical taking of "over 85,000 of [Slide Fire's] bump stocks with a fair market value of $350 to $1,200 per unit," because the Rule required Slide Fire to destroy them on pain of criminal prosecution. Int. Compl. at ¶¶ 20–21, 36; Resp. at 4.

Slide Fire's allegations are adequately pled. A physical taking is "[t]he paradigmatic taking" involving "a direct government appropriation or physical invasion of private property." *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 537 (2005). There is no dispute that bump stocks are

5

personal property protected by the Takings Clause. *Horne v. Dep't of Agriculture*, 576 U.S. 350, 359–60 (2015). Since Slide Fire has alleged that it destroyed at least 85,000 bump stocks—12,000 at its manufacturing facility in Moran, Texas, and 73,000 at a storage facility in Fort Worth, Texas—to comply with the Rule, Int. Compl. ¶¶ 20–21, the Court finds it readily plausible that Slide Fire may be entitled to just compensation.

The government argues that Slide Fire fails to state a claim for a physical taking of bump stocks for two reasons. One, a rule mandating the destruction or surrender of personal property does not physically invade or appropriate that property. Mot. Dismiss at 11. Two, the Rule is incapable of effecting a taking because it is an interpretive rule clarifying pre-existing law, not a legislative rule creating new law.[1] *Id.* at 12–14. The Court rejects these arguments for the reasons given in *Modern Sportsman III*, 176 Fed. Cl. at 571–72, and concludes that Slide Fire has adequately pled a physical taking of the bump stocks over which it claims ownership.

Therefore, defendant's motion to dismiss Slide Fire's physical takings claim is **DENIED**.

### B.      Illegal Exaction of the Bump Stocks

Slide Fire next brings an illegal exaction claim to recover the value of the bump stocks. Int. Compl. at ¶ 51. The Court dismisses this claim as a matter of law.

An illegal exaction claim is a due process claim "for the recovery of monies that the government has required to be paid contrary to law." *Aerolineas Argentinas v. United States*, 77 F.3d 1564, 1572 (Fed. Cir. 1996). Jurisdiction is automatic—that is, the cause of action arises under the Constitution itself, as opposed to a "money mandating" statute or regulation—when "plaintiff has paid money over to the Government, directly or in effect, and seeks return of all or part of that sum' that was 'improperly paid, exacted, or taken from the claimant in contravention of the Constitution, a statute, or a regulation.'" *Boeing Co.*, 968 F.3d at 1383 (quoting *Virgin Islands Port Auth. v. United States*, 922 F.3d 1328, 1333 (Fed. Cir. 2019)).

On the other hand, "[i]f the recovery of money is not at issue, the law is 'clear' that 'a claimant must demonstrate that the statute or provision causing the exaction itself provides, either expressly or by necessary implication, that the remedy for its violation entails a return of money unlawfully exacted.'" *Modern Sportsman III*, 176 Fed. Cl. at 573 (quoting *Boeing Co.*, 968 F.3d at 1383) (alterations omitted). In other words, when the recovery of money is not at issue, plaintiffs must show that the legal provision at issue is "money mandating." *Boeing Co.*, 968 F.3d at 1383.

---

[1]      The government also made a third argument: that the Rule was "unauthorized" for takings purposes. Mot. Dismiss at 26. However, the Rule is authorized under the standard set forth in *Darby Dev. Co., Inc. v. United States*, 112 F.4th 1017 (Fed. Cir. 2024), and the government has not argued that *Darby* is inapplicable or was wrongly decided. Instead, the government only discussed the matter to "preserve our rights should [en banc] review [or panel rehearing] in *Darby* be . . . granted." Mot. Dismiss at 27. The Federal Circuit has now denied further hearing in *Darby*. *See Darby Dev. Co., Inc. v. United States*, No. 2022-1929, 2025 WL 1604947 (Fed. Cir. June 6, 2025) (en banc) (per curiam). The Court therefore deems the argument withdrawn and waived.

At the outset, for the reasons set forth in *Modern Sportsman III*, 176 Fed. Cl. at 571–72, the Court holds that Slide Fire did not pay the market value of the bump stocks to the government "directly or in effect."[2]  *Id.* at 1383.  Therefore, its claim for the market value of the bump stocks does not arise directly under the Constitution.

Unlike the plaintiffs in *Modern Sportsman III*, however, Slide Fire also asserts that "the GCA [Gun Control Act], codified at 18 U.S.C. § 922, [and] the NFA, 26 U.S.C. §§ 5801–5872, . . . implicitly require restitution when regulatory actions exceed statutory authority."  Slide Fire Resp. 28–29.  However, Slide Fire does not point to any particular provisions suggesting that the GCA or the NFA are money-mandating.  The Court notes that there is some evidence to the contrary. When Congress banned machine guns in 1986, it specifically exempted machine guns possessed lawfully prior to May 19, 1986, the date on which the ban went into effect.  18 U.S.C. § 922(o)(2)(B); 27 C.F.R. § 479.105(b).  Congress grandfathered in existing machineguns in part to avoid a large just compensation bill.  18 U.S.C. § 922(o)(2)(B).[3]  In other words, Slide Fire would find an implicit cause of action imposing liability when Congress has tailored the burden of the statute to limit liability.  This the Court is reluctant to do.

Therefore, the Court holds that Slide Fire has failed to state a claim for the illegal exaction of the market value of the bump stocks at issue, and defendant's motion to dismiss the illegal exaction of the bump stocks is **GRANTED**.

## C.    Illegal Exaction of the Cost to Destroy Bump Stocks

Unlike the lead plaintiffs, whose claims were addressed in *Modern Sportsman III*, Slide Fire also alleges that the government illegally exacted the cost of destroying the bump stocks.  To recap, Slide Fire has alleged that it incurred the costs of destroying 73,000 bump stocks at the Fort Worth facility and 12,000 bump stocks at the Moran facility.  *Id.* at ¶¶ 21–22.  The ATF "oversaw" the destruction of some of the bump stocks, but did not destroy the devices itself.  *Id.* at ¶ 22.  Slide Fire alleges that in doing so, ATF illegally exacted "the costs . . . of compliance with an invalid regulation" from Slide Fire.  *Id.* at ¶ 49.

The Court agrees. An illegal exaction claim arises directly under the Constitution when the plaintiff is unlawfully required to pay money to the government not just "directly or in effect." *Boeing Co.*, 968 F.3d at 1382.  The meaning of the phrase "in effect" was explained by the Federal

---

[2]    The Court acknowledges that Slide Fire has preserved the issue for appeal.  Slide Fire Resp. 28.

[3]    "Congress finds that the rights of citizens . . . against uncompensated taking of property . . . require additional legislation to correct existing firearms legislation and enforcement policies . . . and additional legislation is required to reaffirm the intent of Congress, as expressed in section 101 of the Gun Control Act of 1968. . . ."  Firearms Owners' Protection Act, Pub. L. No. 99-308, § 1, 100 Stat. 449, 449 (1986). *See also Gun Control and Const. Rts., Hearing before the Subcomm. on the Const. of the S. Judiciary Comm.*, 96th Cong. 6 (1980) (opening statement of Sen. Birch Bayh, Chairman, Subcomm. on the Const.) ("This hearing has been called to explore the numerous complaints we have received from citizens . . . detailing what they view are constitutional and civil rights abuses by [ATF] enforcing the Gun Control Act.") *and A B. to Protect Firearms Owners' Const. Rts., C.L., and Rts. to Priv.: Hearing on S. 914 Before the S. Comm. on the Judiciary*, 98th Cong. 6 (1983) (statement of Sen. Howell Heflin) ("Presently, federal firearms laws are being unjustly enforced, and property of law-abiding citizens is being confiscated without just compensation.").

Circuit in *Aerolineas Argentinas*, 77 F.3d 1564 (Fed. Cir. 1996). There, the U.S. Immigration and Naturalization Service ("INS") compelled two airlines "to pay to house, sustain, and guard aliens, who, having arrived in the United States on [those] airlines without entry documents, sought political asylum." *Id.* at 1568. The appeals court held that the airlines had stated a claim for an illegal exaction because: (1) the regulation authorizing INS's actions was unlawful, and (2) by forcing the airlines to incur costs that should have been borne by the INS, "the government has 'in its pocket' money corresponding to the payments" made by the airlines. *Id.* at 1573, 1576.

The same is true here. The final rule was undisputedly unlawful, and while the rule gives bump-stock owners the option to either surrender or destroy their devices, plaintiffs have adequately alleged that the ATF directed them to destroy the bump stocks. *See, e.g.*, Cottle Decl. at 13 (stating that an ATF agent "clarified" that the ATF "would not take possession of the bump stocks" and instead "supervise both the transportation and the destruction [of the bump stocks] to confirm compliance"). Since every dollar spent by Slide Fire to destroy the bump stocks was saved by the government, Slide Fire has adequately alleged that it paid money "in effect" and may recover directly under the Constitution. Therefore, defendant's motion to dismiss the illegal exaction claims for the cost of destroying the bump stocks is **DENIED**.

### D.    Taking of Intellectual Property Rights

The Court now turns to Slide Fire's intellectual property claims. Slide Fire alleges a regulatory taking of ten patents, one registered trademark, and one registered copyright on the grounds that the Rule impaired their "exclusive intellectual property rights." Int. Compl. at ¶¶ 35–39. Defendant presents two counterarguments. First, that patents are not private property protected by the Fifth Amendment, therefore Slide Fire alleges only collateral harm or consequential damages. *See* Mot. Dismiss at 19–21. Second, even if the Court were to find patents are protected property, Slide Fire fails, for a variety of reasons, to plausibly allege a *per se* or ad hoc regulatory taking. Mot. Dismiss at 22–23.

The Court resolves this dispute by finding that patents are property protected by the Fifth Amendment's Takings Clause, and that Slide Fire has adequately pleaded a regulatory taking to survive dismissal in this stage of the proceedings.

### 1.    *Intellectual Property is Protected by the Fifth Amendment.*

Defendant argues that patents only "have the attributes of property," but are public rights not protected private property. *See* Reply at 7. The Court disagrees; courts have consistently held patents are intangible property protected by the Fifth Amendment. *See Fla. Prepaid Postsecondary Educ. Expense Bd. v. Coll. Sav. Bank*, 527 U.S. 627, 642 (1999) (citing *Brown v. Duchesne*, 60 U.S. (19 How.) 183, 197 (1856) and *Consol. Fruit-Jar Co. v. Wright*, 94 U.S. 92, 96 (1876)). To state a claim for "a taking under the Fifth Amendment, a plaintiff must identify a legally cognizable property interest." *Am. Bankers Ass'n v. United States*, 932 F.3d 1375, 1384–85 (Fed. Cir. 2019). However, the Fifth Amendment only "protects rather than creates property interests, [and] the existence of a property interest is determined by reference to existing rules or understandings that stem from an independent source, such as state law." *Phillips v. Wash. Legal Found.*, 524 U.S. 156, 164 (1998) (citations omitted). While the "plaintiff bears the burden to

demonstrate a protectable property interest," *Gadsen Indus. Park, LLC v. United States*, 956 F.3d 1362, 1368 (Fed. Cir. 2020), it is "axiomatic that only persons with a valid property interest at the time of the taking are entitled to compensation." *Wyatt v. United States*, 271 F.3d 1090, 1096 (Fed. Cir. 2001).

Patent rights "did not exist at common law," but instead stem from an independent source, and are "creature[s] of statute law." *Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 584 U.S. 325, 335 (2018). Patents "have long been considered a species of property," and patentees are protected by the Fifth Amendment. *Fla. Prepaid*, 527 U.S. at 641–42. At issue there was a federal law which abrogated states' sovereign immunity in patent infringement suits. *Id.* at 630–33. Although the federal government ultimately declined to defend the law on Takings Clause grounds, the Court still found that patents "are surely included within the property of which no person may be deprived by a State without due process of law." *Id.* at 642 (internal quotations omitted). Similarly, in *James v. Campbell* the Court recognized patents are protected even when the government is the exclusive end user of a product. 104 U.S. 356, 357–58 (1882). In granting a patent the government "confers upon the patentee an exclusive property in the patented invention which cannot be appropriated or used by the government itself, without just compensation, any more than it can appropriate or use without compensation land which has been patented to a private purchaser." *Id.*

Defendant then argues that patents only grant the right of exclusivity and fall outside the Fifth Amendment. Mot. Dismiss at 20. *See Bloomer v. McQuewan*, 55 (14 How.) U.S. 539, 549 (1852) (holding the "franchise which the patent grants, consists altogether in the right to exclude everyone from making, using, or vending the thing patented, without the permission of the patentee"); *see also King Instruments Corp. v. Perego*, 65 F.3d 941, 949 (Fed. Cir. 1995) (reviewing the 1952 Patent Act, which defined the rights of patent holders to "'to *exclude others* from making, using, or selling' the invention" (quoting 35 U.S.C. § 154 (1952)) (emphasis in original)). But the Court agrees with Slide Fire that exclusivity is not the only right with a patent. *See Brown*, 60 U.S. (19 How.) at 197 (holding the "*rights* of a party under his patent are private property") (emphasis added) and *Consol. Fruit-Jar*, 94 U.S. at 96 ("[a] patent for an invention is as much property as a patent for land.").[4] And the reverse of *Bloomer* must be true; by holding the right to exclude others from use of the patent, a patent holder thus has the right to not be excluded from the patent, which is exactly what the Rule did.

In fact, patents and other intellectual property have long been held as protected property rights. *See e.g.*, *Seymour v. Osbourne*, 78 U.S. (11 Wall.) 516, 533 (1870) ("Inventions secured by letters patent are property in the holder of the patent, and as such are as much entitled to protection as any other property, consisting of a franchise, during the term for which the franchise or the exclusive right is granted"); *Cammeyer v. Newton*, 94 U.S. 225, 234–35 (1876) ("Agents of the public have no more right to take such private property [a patent for a portable and adjustable still-

---

[4]    The Court further agrees with Slide Fire that defendant's argument, that Slide Fire failed to allege defendant took its right to exclusivity, underscores patent's status as private property. Slide Fire's Resp. at 16. The power to exclude is a "core property right" and "one of the most treasured strands" in the bundle of property rights, and since patents provide that right, it follows that they are property. *See Kaiser Aetna v. United States*, 444 U.S. 164, 179–80 (1979); *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 435 (1982).

water dam] than other individuals under that provision, as it contains no exception warranting any such invasion of the private rights of individuals"); *Bethlehem Steel Co. v. United States*, 42 Ct. Cl. 365, 377–78 (1907) (holding that when the government appropriated Bethlehem Steel's patents for artillery, it took "private property, [and] a contract was thereby implied to make reasonable compensation for such use"); *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1003–04 (1984) (holding Monsanto had a cognizable property right in its trade secrets under Missouri law, which were protected by the Fifth Amendment Takings Clause); *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 730–31 (2002) (holding the temporary monopoly of a patent is a property right); *Cascades Projection LLC v. Epson America, Inc.*, 864 F.3d 1309, 1316 (Fed. Cir. 2017) (Reyna, J. dissenting) ("patent rights cannot be separated from any other type of property right. For as we have said previously, '[p]atent law is not an island separated from the main body of American jurisprudence.'" (quoting *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1351 (Fed. Cir. 2004) (en banc)).

Defendant next claims patents are a limited public franchise, not private rights.  Mot. Dismiss at 19.  Defendant relies on *Christy v. United States*, 141 Fed. Cl. 641, 659–660 (2019), *aff'd* 971 F.3d 1332 (Fed. Cir. 2020), to argue that patents are a limited public franchise, subject to statutory limits and therefore not property.  Mot. Dismiss at 19; Reply at 5–7.  *But cf. Festo*, 535 U.S. at 730–31.  *Christy* followed *Oil States*, holding that an inter partes review ["IPR"], in which the Patent and Trademark Office ["PTO"] has limited power to review and cancel an issued patent, is not a Fifth Amendment taking.  *Christy*, 971 F.3d at 1335–36.  *See also Oil States*, 584 U.S. at 328–30, 342–43.  The IPR process expanded patent review power to two bodies—previously only a court could cancel a patent. *Oil States*, 584 U.S. at 339.  The *Oil States* Court explicitly narrowed its decision, holding "our decision should not be misconstrued as suggesting patents are not property for purposes of the Due Process Clause or the Takings Clause."  *Id.* at 344 (citing *Fla. Prepaid*, 527 U.S. 627 (1999) and *Campbell*, 104 U.S. 356 (1882)).  *Christy* and *Oil States* are limited to the IPR process, irrelevant here, because the patents were taken by ATF rulemaking.

Considering the overwhelming case law on this point, the Court concludes that patents are protected property rights.

### 2. *Slide Fire Did Not Allege Loss of Collateral Interest or Consequential Damages.*

Defendant then argues that because the Rule applied to the physical bump stocks, Slide Fire only alleges loss of collateral interests and consequential damages, neither of which are compensable. Mot. Dismiss, at 21–22; Def. Supp. Resp. at 6.  Defendant conflates the distinct concepts of consequential damages and loss of collateral interests and uses them interchangeably. Neither apply, and defendant's argument should be disregarded.  Since patents are property, alleging a patent was taken by government action is not a loss of a collateral interest or consequential damage.

Both terms were used in *United States v. General Motors Corp.*, 323 U.S. 373, 378, 380 (1945) (holding losses to GM's business and future profits from the government's seizure of its warehouse were "consequential damages" and not compensable as "collateral interests which may be incident to [its] ownership" of the physical thing.").  Although *General Motors* used both terms, courts have distinguished consequential damages from loss of collateral interests.  Consequential damages occur after a compensable taking, whereas loss of collateral interests occurs when

10

government action is not directed at protected property.  *Compare Mitchell v. United States*, 267 U.S. 341, 345 (1925) *with Mitchell Arms, Inc. v. United States*, 7 F.3d 212, 217 (Fed. Cir. 1993).

Consequential damages are unprotected losses after a compensable taking, as in *General Motor*'s seized warehouse.  *See Mitchell*, 267 U.S. at 345 (holding that when the government seized Mitchell's property to create Aberdeen Proving Ground, the taking of the property was compensable but the destruction of Mitchell's corn growing and canning business "was an unintended incident of the taking of the land" and the settled rules of law precluded the President from considering "consequential damages for losses to their business or for its destruction.")

On the other hand, when government action is not directed at a plaintiff's protected property, either by taking something incidental to protected property or by taking another's protected property, that plaintiff loses only a collateral interest.  *See Mitchell Arms*, 7 F.3d at 217. There, the Federal Circuit held that the ATF's revocation of permits to import rifles from Yugoslavia was not a taking because the permits were a "'collateral interest' incident to Mitchell [Arms]'s ownership of the rifles, not themselves property protected by the Fifth Amendment." *Id. See also Huntleigh USA Corp. v. United States*, 525 F.3d 1370, 1380 (Fed. Cir. 2008) (holding Huntleigh's lost contracts with airlines to provide airport security, which were cancelled when post-9/11 regulations federalized airport security, were lost collateral interests even though the contracts themselves were protected property, because the regulation targeted the airlines' responsibility to provide security).  *Huntleigh* does not apply here because the Rule here was aimed at the bump stocks and patents, Slide Fire's property, not a responsibility contracted out to a third party.  *See* Slide Fire Suppl. Br. at 6.

Defendant compares Slide Fire's lost intellectual property to *Taylor v. United States*, 959 F.3d 1081, 1088 n.3 (Fed. Cir. 2020), as a case of consequential damages.  Mot. Dismiss at 21. *Taylor* is a case of lost collateral interest and does not reach consequential damages because no protected property was taken.  The Taylors leased their property, adjacent to a United States Air Force base, to Wind Energy to develop a wind farm.  *Taylor*, 959 F.3d at 1085.  To build a wind farm, the FAA must issue a "no hazard" designation for the airspace above the property, which the Air Force suggested to Wind Energy that the FAA would not provide.  *Id.*  Wind Energy then exercised its option to terminate the lease, and the Taylors sued the United States on the theory that the Air Force's statements constituted a regulatory taking of their contract rights.  *Id.* at 1085–87.  The court found there was no taking because the Taylors had "not identified Fifth Amendment property in the form of 'contract *rights*' against their contract counterparty (Wind Energy) that have been taken from them." *Id.* at 1087 (emphasis in original).

Slide Fire sufficiently pleaded a taking of its intellectual property rights by defendant. Patents are protected property; their loss is not consequential to defendant's seizure of the physical bump stocks.  Since the Rule was directed at physical and intellectual property, Slide Fire did not lose a collateral interest.  Slide Fire alleges that "[t]he confiscation of the physical products, coupled with the cessation of their production and sale, has resulted in a loss of revenue and an infringement on Intervenors' intellectual property rights" which were "rendered effectively useless by the government's action."  *See* Int. Compl., ¶¶ 39–42.  In other words, Slide Fire claims the Rule took its right to exclusivity, a core property interest.  *Id.*  Defendant's claim that the Rule was not directed at the patents because "there is nothing in the Rule stating or suggesting that any intellectual property need be transferred to the Government or that the Government was cancelling the patents or regulating their use" is unconvincing. Def. Supp. Resp. at 3.  However, by alleging

the Rule took its right to exclusivity, Slide Fire alleges the Rule effectively cancelled the patents. But as *Oil States* made clear, only the PTO or a court can cancel a patent and only under limited circumstances. 584 U.S. at 328–30. While Slide Fire claims loss of revenue from the taking of the intellectual property rights, that is not compensable and does not satisfy RCFC 12(b)(6). *See e.g.*, *General Motors*, 323 U.S. at 380. It is the effective seizure of the intellectual property itself which is protected by the Fifth Amendment and compensable. *See* Int. Compl., at ¶ 41.

> 3.    *Slide Fire Sufficiently Pleaded a Regulatory Taking to Survive Dismissal.*

Finally, defendant argues that even if patents are property protected by the Fifth Amendment, Slide Fire cannot establish either a *per se* categorical or ad hoc regulatory taking of the intellectual property. *See* Mot. Dismiss at 22–23. The Court finds Slide Fire has sufficiently pleaded a regulatory taking to survive dismissal. The Rule was an improper regulation that went too far and was overturned in *Cargill. See Penn. Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922) ("if regulation goes too far it will be recognized as a taking"); *Lingle*, 544 U.S. at 537 ("government regulation of private property may, in some instances, be so onerous that its effect is tantamount to a direct appropriation or ouster" and is compensable under the Fifth Amendment). Slide Fire alleges a *per se* taking, and in the alternative, an ad-hoc taking, which the Court addresses in turn.

First, defendant argues the Rule was an interpretive rule on a regulation designed to protect public safety, "the sort generally found not to produce a taking." Mot. Dismiss at 23. The Court again rejects this argument. *Modern Sportsman III*, 176 Fed. Cl. at 572. The Rule was a legislative rule which created "new obligations that did not exist prior to the effective date," which can produce a taking. *Id.*

The Supreme Court defined *per se* categorical takings in *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1015 (1992). There, the owner of two beachfront lots sued the state when it enforced a coastal-zone construction ban, which rendered the lots "valueless." 505 U.S. at 1020. The Court held that if there is no bar to economic use apparent in the title, then "a regulation that declares 'off-limits' all economically productive or beneficial uses of land goes beyond what the relevant background principles would dictate, compensation must be paid to sustain it." *Id.* at 1030. The Court distinguished two types of categorical takings; the first type occurs when a regulation causes a physical invasion of the property. *Id.* at 1015. The second, and the one most relevant here, occurs "where regulation denies all economically beneficial or productive use of the land." *Id.*

Defendant argues the Federal Circuit declined to extend *Lucas* to intangible property in *A&D Auto Sales, Inc. v. United States*. 748 F.3d 1142 (Fed. Cir. 2014). This overstates the case; the Federal Circuit has "not had occasion to address whether the categorical takings test applies to takings of intangible property" and so "decline[d] to decide the issue at [that] stage of the litigation since the issue ha[d] not been briefed by the parties." *A&D Auto Sales*, 748 U.S. at 1151–52. But the Supreme Court in *Ruckelshaus* recognized that property includes not just the physical thing but "the group of rights inhering in the citizen's relation to the physical thing, as the right to possess, use and dispose of it," which are protected by the Fifth Amendment just the same. 467 U.S. at 1003–04 (quoting *General Motors*, 323 U.S. at 377–78). *See also Huntleigh*, 525 F.3d at 1377–78 (the Takings Clause protects real, personal, and intangible property). Furthermore, the Federal

Circuit has "applied the categorical test to personal property on occasion," meaning it has affirmatively recognized *Lucas* applies to two of the three categories of property protected by the Fifth Amendment. *A&D Auto Sales*, 748 U.S. at 1151 (citing *Rose Acre Farms, Inc. v. United States*, 373 F.3d 1177, 1196–98 (Fed. Cir. 2004); *Maritrans, Inc. v. United States*, 342 F.3d 1344, 1353–55 (Fed. Cir. 2003)). *Cf. Consol. Fruit-Jar*, 94 U.S. at 96 (holding patents for inventions are as much property as patents for land). The Court finds that intangible property can be subject to *per se* regulatory takings.

Next, defendant argues there is no categorical taking because a categorical taking only occurs where a regulation permanently deprives property of all its value. *See Tahoe-Sierra Pres. Council v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 329–30 (2002) (holding that the *Lucas* categorical rule "would not apply if the diminution in value were 95% instead of 100%"). Anything less than a "'complete elimination in value' or a 'total loss' [] would require the kind of analysis applied in *Penn Central*." *Id.* at 330 (quoting *Lucas*, 505 U.S. at 1019–20). Defendant argues that Slide Fire cannot argue a total loss because whatever value was lost was only lost for the limited time the Rule was in effect, and there are no temporary *per se* takings. *Id. See also Bass Enters. Prod. Co. v. United States*, 381 F.3d 1360, 1365 (Fed. Cir. 2004) (holding there can be no *per se* categorical takings for temporary regulatory takings).

A key factor in *per se* takings, therefore, is whether the prohibition by the regulation is designed to be permanent, not whether it is changed or overturned later. *See First Eng. Evangelical Lutheran Church of Glendale v. Cnty. of Los Angeles*, 482 U.S. 304, 315–21 (1987) (holding that "where the government's activities have already worked a taking of all use of property, no subsequent action by the government can relieve it of the duty to provide compensation for the period during which the taking was effective."). The taking in *Lucas* was still ruled a permanent taking even though the statute at issue was amended during litigation and Mr. Lucas may have been able to receive a building permit. 505 U.S. at 1012. *Cf. Tahoe-Sierra*, 535 U.S. at 339–41 (holding that takings limited to periods during which government planners undertake "informed decisionmaking" are not ripe for a categorical taking claim and therefore should be analyzed under the *Penn Central* framework (citing *Palazzolo v. Rhode Island*, 533 U.S. 606, 620–21 (2001)).

Slide Fire has sufficiently pleaded a categorical taking. The ATF was aware that the regulation would have extraordinary consequences to Slide Fire. *See* 83 Fed. Reg. 66514, 66526 (acknowledging the Rule caused Slide Fire to close its business but arguing its narrow application was not punitive or a bill of attainder). *See also Lucas*, 505 U.S. at 1030–32 (a regulation designed to remove all productive uses of property requires compensation). *Cf. Tahoe-Sierra*, 535 U.S. at 322–23 (partial intrusions into business would require a fact-based analysis different from categorical takings). The ATF did not pause Slide Fire's patent rights to undertake "informed decisionmaking" when it published the Final Rule. The purpose of the Rule was to ban the products and abrogate the patent rights. The regulatory taking was not temporary; it was permanent and complete from the time it was enacted until the Supreme Court struck it down.

Defendant's argument that Slide Fire failed to plead an ad hoc taking fails for much the same reason as its *per se* argument. A court determines an ad hoc regulatory taking through the *Penn Central* analysis. *See Penn Central Transportation Co. v. City of New York*, 438 U.S. 104, 124 (1978). Under this analysis, courts must look at (1) the "economic impact of the regulation on the claimant," (2) the "extent to which the regulation has interfered with distinct investment-backed expectations," and (3) "the character of the governmental action." *Id.*

13

Defendant argues that each factor weighs against a regulatory taking because Slide Fire "has not adequately asserted the required level of economic impact or the required nexus to government action." Mot. Dismiss at 23–25. Defendant argues that Slide Fire retained its intellectual property rights after the Rule was published and "where a complaint suggests 'that the government has done nothing to affirmatively proscribe plaintiffs' use of their property,' there can be no taking as a matter of law." *Perry v. United States*, 149 Fed. Cl. 1, 24 (2020) (citing *Energy Sec. of Am. Corp. v. United States*, 86 Fed Cl. 554, 565 (2009)). As described above, the Rule prohibited Slide Fire from making any use of its patents.

Further, defendant's argument that "it should not prove burdensome for a plaintiff who has suffered an economic loss to provide a defendant with some indication of the loss and causal connection that the plaintiff has in mind" and that Slide Fire's complaint therefore fails is absurd. *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347 (2005). Slide Fire adequately pleaded that its intellectual property "has been substantially diminished" and "rendered effectively useless by the government's actions." Int. Compl. at ¶¶ 40, 42. *See also Forest Props., Inc. v. United States*, 177 F.3d 1360, 1367 (Fed. Cir. 1999) ("the economic impact of the regulation upon the claimant is measured by the change, if any, in the fair market value caused by the regulatory imposition." (internal quotations omitted)). As described above, Slide Fire turned over all its bump stocks for destruction and the Rule prohibited Slide Fire from utilizing its intellectual property to make and sell more under pain of prosecution.

The parties require discovery to determine the diminution in value of Slide Fire's intellectual property. But Slide Fire has "plausibly suggest[ed]" an entitlement to relief. *Kam-Almaz*, 682 F.3d at 1367. Therefore, defendant's motion to dismiss plaintiff-intervenor Slide Fire's intellectual property claim is **DENIED**.

## IV.    Conclusion

For the foregoing reasons, defendant's motion to dismiss, ECF No. 72, is **GRANTED-IN-PART** and **DENIED-IN-PART**.

**IT IS SO ORDERED.**

s/ *Loren A. Smith*

Loren A. Smith,
Senior Judge